173 P.3d 523

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Gregory HEGGLAND, Defendant–Appellee.**

**No. 27755.**

Intermediate Court of Appeals of Hawai'i.

Nov. 8, 2007.

Anson K. Lee and Dakota K. Frenz, deputy prosecuting attorneys, County of Hawai'i, on the briefs, for plaintiff-appellant.

Taryn R. Tomasa, deputy public defender, State of Hawai'i, on the briefs, for defendant-appellant.

WATANABE, Presiding Judge, NAKAMURA and FUJISE, JJ.

PER CURIAM.

In this appeal, Plaintiff–Appellant State of Hawai'i (the State) challenges the sentence of probation that the Circuit Court of the Third Circuit [1] (the circuit court) imposed on Defendant–Appellee Gregory Heggland (Heggland or Mr. Heggland) following Heggland's plea of guilty to Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (HRS) § 712–1243(1) (Supp.2005),[2] and Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329–43.5(a) (1993).[3] During the proceedings below, the State moved to sentence Heggland to a mandatory minimum term of imprisonment of one year and eight months pursuant to HRS § 706–606.5 (1993 & Supp. 2005)[4] on grounds that Heggland was a re-

---

1. The Honorable Glenn S. Hara presided.

2. Hawaii Revised Statutes (HRS) § 712–1243 (Supp.2005) provides as follows:

   **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

   (2) Promoting a dangerous drug in the third degree is a class C felony.

3. The relevant part in HRS § 329–43.5 (1993) provides as follows:

   **Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction

may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. The part of HRS § 706–606.5 (1993 & Supp. 2005) that is relevant to this appeal provides as follows:

   **Sentencing of repeat offenders.** (1) Notwithstanding section 706–669 and any other law to the contrary, any person convicted of ... any of the following class C felonies: section ... 712–1243 relating to promoting a dangerous drug in the third degree; ... shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:

   (a) One prior felony conviction:

   . . . .

   (iv) Where the instant conviction is for a class C felony offense enumerated above— one year, eight months;

   . . . .

   (2) Except as in subsection (3), a person shall not be sentenced to a mandatory minimum period of imprisonment under this sec-

peat offender, having committed the offense of Promoting a Dangerous Drug in the Third Degree on August 28, 2003, during the period "[w]ithin the maximum term of imprisonment possible after a prior felony conviction" in Colorado for Conspiracy to Commit Aggravated Robbery. The circuit court denied the State's motion, concluding that the State failed to adduce sufficient evidence that Heggland was represented by counsel or waived his right to representation by counsel at the time of his prior conviction in Colorado.

Relying on *State v. Sinagoga*, 81 Hawai'i 421, 918 P.2d 228 (App.1996), and *State v. Mitsuda*, 86 Hawai'i 37, 947 P.2d 349 (1997), the State now argues that the circuit court erred in denying the State's motion because, in the absence of a good-faith challenge by Heggland as to the counseled nature of his prior conviction, the State had no burden of proving that Heggland was represented by counsel or waived representation of counsel at the time of his prior conviction.

We vacate the sentencing portion of the Judgment and remand for resentencing.

## PROCEDURAL BACKGROUND

The State filed its "Motion to Impose Mandatory Term of Imprisonment, Pursuant to [HRS § 706–606.5], as Amended," on October 31, 2005. At a November 2, 2005 hearing on the State's motion, Heggland stipulated that he had a prior felony conviction in Colorado. He also stipulated "that at the time of

the present offense in this case, he was on parole for a ... felony conviction in Colorado for conspiracy to commit aggravated robbery; and that he remained on parole until November 21st, 2004; and up until November 21st, 2004, his parole could be revoked." However, Heggland opposed the imposition of a mandatory minimum term of imprisonment, arguing that he had not committed the offense of Promoting a Dangerous Drug in the Third Degree "within the maximum term of imprisonment possible after a prior conviction of another jurisdiction" pursuant to HRS § 706–606.5(2)(f). The circuit court continued the hearing to December 7, 2005 so that the parties could research the factual issues regarding the length of the Colorado sentence or the length of the possible maximum sentence for the offense for which Heggland was convicted in Colorado.

At the December 7, 2005 hearing, Heggland again stipulated that at the time he committed the offense in the instant case, he had a prior felony conviction in Colorado for Conspiracy to Commit Aggravated Robbery and was on parole for that offense until November 21, 2004. The State offered two exhibits into evidence. Exhibit 1, which was received into evidence without objection, appears to be a printout, downloaded from the Internet, of various Colorado laws related to sentencing in criminal cases. Exhibit 2 consists of two documents,[5] the first appearing to be a summary of information about a case against Heggland in Colorado and the sec-

---

tion unless the instant felony offense was committed during such period as follows:

. . . .

(f) Within the maximum term of imprisonment possible after a prior felony conviction of another jurisdiction.

5.  The heading at the top of the first page of the first document of Exhibit 2 reads, "Integrated Colorado Online Network (ICON)[,]" and the last page includes a certification by a deputy clerk of the District/County Court of El Paso County, Colorado that the document is a true and correct copy of the original in the custody of the clerk of the court. The first document appears to be a summary of information about a case captioned, "The People of Colorado vs EGGLAND [sic], GREGORY[,]" and includes many esoteric abbreviations. The document suggests, however, that Defendant–Appellee Gregory Heggland (Heggland) committed the offense of "Criminal Con-

spiracy" to commit "Aggravated Robbery" with the use of a deadly weapon on December 18, 1996 and was sentenced on November 14, 1997 to serve a five-year term of imprisonment, with credit for time served of 323 days.

The second document of Exhibit 2 is a copy of an "Information" certified by a deputy clerk of the District/County Court of El Paso County, Colorado on December 14, 2004 to be a "true, and correct copy of the original in [the clerk's] custody." The Information charges Heggland, then a juvenile, with committing various offenses, including "Conspiracy to Commit Aggravated Robbery (F–4)." The copy of the certified Information does not include a file-marked stamp, but contains a notarized affidavit signed on January 24, 1997 by an investigating peace officer stating on personal knowledge that each offense set forth in the Information was committed as charged.

ond, a certified copy of an instrument entitled "Information" that was filed against Heggland in Colorado. Heggland's counsel and the circuit court had questions about Exhibit 2:

THE COURT: —this looks like a Colorado rap sheet.

[DEFENSE COUNSEL]: It appears to be the minutes, uh, and I'm not sure that is considered a judgment.

THE COURT: I don't know what it is. All I know the end certifies to be a true and correct copy by the clerk of the District Court or County Court.

[DEPUTY PROSECUTOR]: Your Honor, if I may. My understanding of this is that this is a copy or a certified copy of, uh, for want of a better word, uh, the abstract showing the arrest and the conviction in Colorado.

THE COURT: Okay, [Defense Counsel]?

[DEFENSE COUNSEL]: Your Honor, the—I think the case law says they have to show a valid prior conviction.

THE COURT: But isn't that what you stipulated to?

[DEFENSE COUNSEL]: That he was—uh, that he has a prior conviction for conspiracy to commit aggravated robbery, yes.

THE COURT: I don't see in the stipulation anywhere with respect to when he was convicted.

[DEPUTY PROSECUTOR]: Well, the document would bear that out, Judge.

THE COURT: Well, if I admit it.

[DEPUTY PROSECUTOR]: Yes. Your Honor, if necessary, I can put Mr. [Reginald] Une [ (Une or Mr. Une) ] on for proof of that fact.

THE COURT: What is he going to testify to?

[DEPUTY PROSECUTOR]: He would testify that based on his review of the case file that—

THE COURT: —I would expect that some kind of a certified court document from Colorado with respect to evidence of conviction if the dates are in question.

[DEPUTY PROSECUTOR]: Well, yes, Your Honor, that's what Exhibit Number 2 is, but I think the Court is saying what if I don't accept it.

THE COURT: I mean if these are minutes, I don't know if we can use minutes even in our court of our own convictions to prove convictions.

[DEPUTY PROSECUTOR]: I would submit, Your Honor, that this is an abstract that has been certified as being a correct copy of the original on file.

THE COURT: Abstract of court records?

[DEPUTY PROSECUTOR]: Yes. I will represent to the Court that we got this from the court in Colorado.

THE COURT: So you think if you had to prove a conviction in our courts for repeat offender purposes, you could use something like CJIS [ (Criminal Justice Information System) ] even if it were certified?

[DEPUTY PROSECUTOR]: Not so much CJIS, Your Honor, but as far as I understand, any kind of official court record kept in the ordinary course of business.

THE COURT: Why don't you call Mr. Une. Is he here?

Une, Heggland's former parole officer, then testified. He stated that he supervised Heggland's parole for the Colorado conviction through an interstate compact. He assumed case supervision over Heggland in November 2001 and was informed then that the maximum supervision term for Heggland's parole ended on November 21, 2004, which was Heggland's "controlling discharge date." Une testified that if Heggland's parole were revoked prior to the controlling discharge date, he "could have been sent back" to prison. Une said that, based on his review of the documentation in the interstate compact packet that the State of Colorado sent, Heggland was convicted on November 14, 1997. Une also stated that no copy or certified copy of the judgment in Heggland's Colorado case was included in the documentation sent by Colorado.

After receiving the evidence, the circuit court orally ruled as follows:

> [T]he Court is going to deny the State's motion for repeat offender treatment in this case and mandatory minimum term on the following grounds.
>
> The State has failed to prove that the defendant was represented by counsel or that the defendant knowingly or intelligently waived representation at the time of prior conviction as required by *State v. Freitas* and *State v. Afong.* The *Afong* case is 61 Haw. 281[, 602 P.2d 927].

The deputy prosecutor then orally moved for reconsideration.

> [DEPUTY PROSECUTOR]: May I ask or at least make an oral motion for reconsideration at this time? The basis for that is this[: t]he Court had stated that the State has not proven that he was—defendant was represented by counsel. I would refer the Court to State's Exhibit Number 2, which has been stipulated into evidence. The second page thereof down—near the bottom, uh, it refers to the parties present, November 14th, 1997 minute order. Judge Childress, DA Warkentin, DPWC PD Bonnet. I believe that stands for public defender, Judge, so.
>
> THE COURT: You can argue that but I don't know what it says. I'm looking at the document. There's nobody here to testify what it says.
>
> [DEPUTY PROSECUTOR]: Well, I ask the Court to take judicial notice of an adjudicated fact pursuant to Hawaii Rules of Evidence 201, ask the Court—or if the Court wishes, the State can check.
>
> THE COURT: You're asking me to speculate as to what those initials stand for.
>
> [DEPUTY PROSECUTOR]: Not speculate, Your Honor, but.if the Court takes judicial notice if it's something easily ascertainable, then I ask the Court to do that.
>
> If the Court wishes the State to do that, the State will readily do so.
>
> THE COURT: Okay, I'm declining to do that as I indicated. I think it's your burden at the motion to prove these

things, and, uh, I'm not convinced that the State has presented enough evidence to support its burden at this point on the representation issue.

> So if you want to go ahead and bring it up again on the hearing date, you may. But at this point, I'm not—I'm going to deny your oral request for reconsideration.
>
> . . . .
>
> . . . So—I'm sorry, I'm not making light of the State's burden. I think it's very difficult to prove prior convictions. Although it may sound simple, but it's not that easy.

The circuit court then continued the matter to January 17, 2006.

On January 17, 2006, the circuit court began the hearing by correcting its oral ruling at the December 7, 2005 hearing.

> [A]pparently the Court made an error the last time by stating that the State has a burden of proof of establishing the conviction and also the, uh, requirement that the convictions have been with counsel appointed in that case by evidence beyond a reasonable doubt.
>
> In reviewing *State v. Freitas,* uh, it states that the facts of his prior conviction must be established by satisfactory evidence in an ordinary sentencing proceeding, okay.
>
> In reassessing the evidence based on the procedures set forth in *State v. Freitas,* the Court is still not persuaded that the State has established the purported Colorado conviction by satisfactory evidence in this case.
>
> The State's submitted Exhibit 2 at the December 7th, 2005 hearing on the motion for imposition of mandatory term of imprisonment. Exhibit 2 appears to be two separate documents. The first is a three-page certified copy of what it is—what is entitled, quote, Integrated Colorado Online Network Icon. The other document in Exhibit 2 appears to be a two-page information in, quote, 97CR329 close quote.
>
> Uh, also having considered the, uh, testimony of parole officer Une, the Court is still of the mind and concludes that the fact of defendant's prior conviction, which is

the basis for the State's 706–606 point 5 motion, has not been established by satisfactory evidence.

Court would note that in *Freitas,* among other things, there was a certified judgment of conviction. There's no certified judgment on conviction here.

The Integrated Colorado Online Network document submitted, while it suggests that Mr. Heggland was convicted of a class 4 felony, uh, again there is a lack of a what the Court would consider satisfactory evidence of his conviction. Furthermore, what was submitted does not indicate that he was, uh, represented by counsel, uh, in their proceedings that are indicated in the Integrated Colorado Online Network document.

The Hawaii case law is very specific that you do need to show that he was represented by counsel.

So, uh, the Court again based on its reconsideration of the matters based on its incorrectly stated burden of proof on the State would find that, uh, defendant—I'm sorry, State's motion for sentencing under 706–606 point 5 is denied.

The deputy prosecutor then argued as follows:

Your Honor, under *State v. Sinagoga,* the State has no burden to show any conviction unless it's first challenged by defense counsel; and up until this point, I don't think there's anything on the record that establishes that defendant is challenging the validity of prior conviction, especially taking into account the fact that the defendant stipulated to certain items in this matter that establishes his prior criminal conviction in Colorado. I think that is— the stipulation is enough evidence of the conviction which gives rise to the imposition of the mandatory minimum.

The following colloquy then ensued:

THE COURT: —... [D]idn't the defense reserve its right to say that he was eligible for probation?

[DEPUTY PROSECUTOR]: That was never my understanding. It was a matter of—my understanding with the plea agreement was the defendant was going to stipulate that there are fact—well, first of all, my first understanding was they were going to stipulate to his exposure to mandatory minimum. We were going to—we, being the State and the defense as well as the Court through a Rule 11, was [sic] going to agree that the mandatory minimum was going to be reduced to zero based on his honesty in taking responsibility for these crimes.

Subsequent to the change of plea, I found out through discussions with counsel that it's—defense counsel was never agreeing that the mandatory minimum was gonna be imposed, which was different than what I understood. I don't know if the Court understood in giving the Rule 11.

Then based on that, the State filed its motion for mandatory minimum, and that's where—where we are today.

. . . .

[DEFENSE COUNSEL]: We did not agree that he would be subject to the mandatory minimum, that it would be applicable to him.

THE COURT: Guilty plea forms says [sic] defendant may request any legal sentence.

. . . .

[DEPUTY PROSECUTOR]: ... [I]s the Court's position that despite any challenges by or a lack of a challenge by defense the Court's gonna deny the State's motion?

THE COURT: That's correct.

[DEPUTY PROSECUTOR]: Okay.

THE COURT: Again, I don't see that has [sic] a lack of defense challenge. I'm not finding that. I mean we're here because obviously there was a difference of position at one point in time or at least I perceive that to be in terms of what they were asking for other than a prison sentence.

. . . .

[DEPUTY PROSECUTOR]: ... I am representing to the Court that I haven't heard anything from defense counsel to challenge the Colorado conviction. I just want to make the record clear on that because I'm gonna ask the Court to recon-

sider its ruling. If it doesn't, I'm gonna appeal it because based on *Sinagoga* and another case, *State v. Mitsuda,* where the Supreme Court adopts the procedures set forth in *Sinagoga,* which requires the defense counsel—the defense counsel or defendant to first contend that one or more of the criminal convictions was either uncounseled or otherwise invalidly entered or not—or against the defendant I.D. wise.

Up until this point, he stipulated that he was in fact previously convicted. I don't hear him arguing that it was an uncounseled plea.

So based on that, there's no threshold issue. The Court must accept what has been presented to it and then impose the mandatory minimum.

. . . .

THE COURT: —what I hear you say is that the only reason you filed a motion is because he was saying prove the conviction. That's enough of a challenge to me.

[DEPUTY PROSECUTOR]: No. Prove it up in the sense that he was the person convicted, that it was within the terms required by the HRS. I never heard him say that the previous convictions were uncounseled, and I think the record will be clear about that. If [Defense Counsel] is saying he's challenging the validity of the prior conviction, that's something else but I never heard him assert that.

. . . .

[DEFENSE COUNSEL]: Your Honor, my statement at the change of plea is also we will be opposing any imposition of mandatory minimum terms of imprisonment for Mr. Heggland.

[DEPUTY PROSECUTOR]: But that's fine and I accepted that. But what the defense needs to do in *Sinagoga* is he has to step forward and say he has the burden of challenging whether or not the Colorado convictions were invalid. In this particular case, he doesn't do that.

THE COURT: Okay. I think what you're reading that to mean they have to raise it as an issue. I think they have. I don't think—at that point, I don't think they have the burden of going forth or the burden of persuasion to shift anything on

you to provide proof at that point. So that's how I read that case. It's more of a notice issue rather than a burden issue.

[DEPUTY PROSECUTOR]: Well, the *Sinagoga* case distinguishes *Afong* and goes on to say that the facts left the impression of whether the defendant has any burden to challenge the prior conviction or convictions listed on a presentence report, which defendant contends is or are invalid. Our answer's yes.

THE COURT: But that was for concurrent or consecutive.

[DEPUTY PROSECUTOR]: Okay, right. And then I turn to the *Mitsuda* case in which the Supreme Court basically adopts the procedures set forth in *Sinagoga.*

So I understand the Court's ruling, and I'm just trying to make the record clear that I have never heard defense counsel, uh, challenge the prior convictions with regard to whether or not they were uncounseled or otherwise—basically uncounseled or that he is in fact not the same defendant in the Colorado conviction.

THE COURT: Okay. So the ruling on the State's motion for minimum mandatory sentencing under 706–606 point 5 is denied.

## DISCUSSION

### I.

The Hawai'i Supreme Court first examined the procedural requisites for imposing a mandatory minimum sentence under HRS § 706–606.5 in a trilogy of cases in 1979. In *State v. Freitas,* 61 Haw. 262, 602 P.2d 914 (1979), the supreme court held that

before sentence may be imposed under [HRS § 706–606.5], the defendant must be given reasonable notice of the intended application of [HRS § 706–606.5]; he [or she] must be given the opportunity to be heard; the fact of his [or her] prior conviction must be established by satisfactory evidence; and he [or she] must have been represented by counsel (or have knowingly

and intelligently waived representation) at the time of his [or her] prior conviction.

*Id.* at 277, 602 P.2d at 925.

In *State v. Afong*, 61 Haw. 281, 602 P.2d 927 (1979), the Hawai'i Supreme Court held that "*[u]nless conceded by the defendant*, the state is required to show, by evidence satisfactory to the court, the fact of the defendant's prior conviction, as well as the fact of his [or her] representation by counsel, or the waiver thereof, at the time of his [or her] prior conviction." *Id.* at 282, 602 P.2d at 929 (citation omitted and emphasis added).

In *State v. Caldeira*, 61 Haw. 285, 602 P.2d 930 (1979), the supreme court reiterated the *Afong* holding and stated that "*unless conceded by the defendant*, the government is required to show, in [HRS § 706–606.5] proceedings, that [the defendant] was represented by counsel, or had waived such representation, at the time of his [or her] prior conviction." *Id.* at 290, 602 P.2d at 933 (citations omitted and emphasis added).

In *State v. Sinagoga*, 81 Hawai'i 421, 918 P.2d 228 (App.1996), a majority of this court established a procedure for determining whether a prior conviction "was conceded by the defendant" for purposes of applying the holding of *Afong*. The majority held that in ordinary sentencing situations, which includes mandatory minimum sentencing under HRS § 706–606.5, after the sentencing judge has been informed pursuant to a presentence diagnosis and report or otherwise of a defendant's prior conviction(s),

> each conviction listed may be used against defendant except those as to which the defendant timely responds with a good faith challenge on the record that the prior criminal conviction was (1) uncounseled, (2)

otherwise invalidly entered, and/or (3) not against the defendant.

*Id.* at 445, 918 P.2d at 252.

The majority noted that the lack of reliability of an uncounseled criminal conviction precluded use of the conviction as a basis for imposing or enhancing a prison sentence. The majority then explained:

> In our view, if the presentence report states that the defendant has a prior criminal conviction and the defendant does not respond to that report with a good faith challenge on the record that the reported criminal conviction was (1) uncounseled, (2) otherwise invalidly entered, or (3) not against the defendant, that prior criminal conviction is reliable for all sentencing purposes. We agree with *Triptow* [6] that the defendant, more than anyone else, knows whether or not his or her prior criminal conviction was uncounseled, otherwise invalid, or irrelevant.

*Id.* at 445, 918 P.2d at 252 (footnote added).

█ The majority then set forth a five-step procedure for trial courts to follow in cases "where ordinary sentencing procedures are applicable and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for the imposition or enhancement of a prison sentence." *Id.* at 447, 918 P.2d at 254.

> Step one, the court shall furnish to the defendant or defendant's counsel and to the prosecuting attorney a copy of the presentence report, HRS § 706–604, and any other report of defendant's prior criminal conviction(s). *Step two, if the defendant contends that one or more of the reported prior criminal convictions was (1) uncounseled, (2) otherwise invalidly entered,* [7] *and/or (3) not against the defen-*

---

6. *State v. Triptow*, 770 P.2d 146 (Utah 1989).

7. In *State v. Veikoso*, 102 Hawai'i 219, 74 P.3d 575 (2003), the Hawai'i Supreme Court essentially limited a defendant's ability to collaterally attack a prior conviction to an attack based on a claim that the conviction had been obtained in violation of the right to counsel. *Id.* at 226–27, 74 P.3d at 582–83. For purposes of its analysis, the court defined "collateral attack" as a defendant's "attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying

such judgment or decree." *Id.* at 223, 74 P.3d at 579. Given the limits it imposed on collateral attacks of prior convictions, the supreme court stated that the language in *State v. Sinagoga*, 81 Hawai'i 421, 918 P.2d 228 (App.1996), permitting a defendant to challenge a prior conviction on the ground that it was "otherwise invalidly entered" should be disregarded. *Veikoso*, 102 Hawai'i at 227 n. 8, 74 P.3d at 583 n. 8. Pursuant to *Veikoso's* modification of the *Sinagoga* procedure, a defendant is permitted to challenge a prior conviction on the grounds that it was (1)

*dant, the defendant shall, prior to the sentencing, respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge.* Step three, prior to imposing the sentence, the court shall inform the defendant that (a) each reported criminal conviction that is not validly challenged by the defendant is defendant's prior, counseled, validly entered, criminal conviction, and (b) a challenge to any reported prior criminal conviction not made by defendant before sentence is imposed may not thereafter, absent good cause, be raised to attack the court's sentence. Step four, with respect to each reported prior criminal conviction that the defendant challenges, the HRE [ (Hawaii Rules of Evidence) ] shall apply, and the court shall expressly decide before the sentencing whether the State satisfied its burden of proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true. Step five, if the court is aware of the defendant's prior uncounseled or otherwise invalid criminal conviction(s), it shall not impose or enhance a prison sentence prior to expressly stating on the record that it did not consider it or them as a basis for the imposition or enhancement of a prison sentence.

*Id.* (emphasis and footnote added).

█ The majority emphasized that under these procedures, the defendant has no burden to produce any evidence but only has the burden of raising a good-faith challenge to prior convictions that are attributed to him or her in a presentence report. *Id.* at 445, 447, 918 P.2d at 252, 254. The majority's decision established that a defendant "concedes" the validity of his or her prior conviction within the meaning of *Afong* by failing to raise a good-faith challenge to the conviction. Other jurisdictions have adopted the same approach and have held that by failing to object, a defendant concedes the validity of a prior conviction listed in a presentence report. *People v. Matthews,* 362 Ill.App.3d 953, 299 Ill.Dec. 411, 842 N.E.2d 150, 161–62 (2005) (holding that by failing to object to his presentence report, the defendant conceded

the accuracy of the report with respect to his prior convictions and the appropriateness of his sentencing as a repeat offender); *United States v. Bennett,* 472 F.3d 825, 833–34 (11th Cir.2006) (holding that by failing to object to the facts of his prior convictions as contained in his presentence report, the defendant is deemed to have admitted those facts); *United States v. Fagans,* 406 F.3d 138, 142 (2d Cir.2005) (holding that because the defendant made no objection to the facts contained in his presentence report, the fact of his prior conviction referenced in the report may be taken as admitted).

In *State v. Mitsuda,* 86 Hawai'i 37, 46, 947 P.2d 349, 358 (1997), the Hawai'i Supreme Court endorsed the use of the five-step procedure set forth in *Sinagoga* by citing it as the basis for the court's decision in a case involving the imposition of a mandatory minimum sentence for a repeat offender. The defendant in *Mitsuda* contended on appeal that "the trial court erred in imposing a mandatory minimum sentence based on his status as a repeat offender because ... 'the record fails to show that he was represented by counsel during the alleged prior offense.' " *Id.* The supreme court rejected the defendant's argument, stating as follows:

> In [the defendant's] reply brief, he acknowledges that the issue is controlled by *State v. Sinagoga,* 81 Hawai'i 421, 918 P.2d 228 (App.1996). In that case, the ICA [ (Intermediate Court of Appeals) ] outlined the procedures to be followed where a trial court uses a defendant's prior convictions as a basis for enhancement of sentence. *Id.* at 447, 918 P.2d at 254. The trial court followed those procedures in this case.

*Id.*

## II.

█ Heggland's presentence diagnosis and report (presentence report) referred to his Colorado conviction for Conspiracy to Commit Aggravated Robbery and other offenses Heggland was charged with committing in Colorado and Arizona when he was seventeen years old. The presentence report stat-

---

uncounseled and/or (2) not against the defendant.

ed that Heggland's record in Colorado was contained in the NCIC (National Crime Information Center) database but that there was no record of his Arizona offense, except for a reference that his Colorado sentence would be served concurrently with his Arizona sentence. Heggland was charged in Colorado with Aggravated Robbery (Count I), Crime of Violence (Count II), Conspiracy to Commit Aggravated Robbery (Count III), and Aggravated Motor Vehicle Theft in the First Degree (Count IV).

The presentence report states that according to Heggland, he and a friend stole a car from a pizza delivery driver in Colorado, with Heggland using a .38 caliber handgun during the offense. Heggland stated that shortly after the offense in Colorado, he again used the .38 caliber handgun and, along with two friends, robbed a man in Arizona of $7.00 and a cold pack of beer. Heggland further related that he and five others entered an Arizona apartment in which someone was home. Gun shots were fired and "one of the guys from Arizona" was shot.

The presentence report contains the following additional information regarding Heggland's Colorado conviction:

> [Heggland] said he was sentenced in 1997 for the Arizona case first. (It is not known if he was sentenced as an adult.) He was then extradited to Colorado and arrested on November 5, 1997. On November 14, 1997, he was sentenced to five years [sic] prison for Conspiracy to Commit Aggravated Robbery (Count III), concurrent with his Arizona sentence, with credit for 323 days time served. The remaining Counts were dismissed. He noted that he got a stiffer sentence than his codefendants as he was the one who possessed the handgun. After sentencing in Colorado, he said he was returned to Arizona to serve his prison term. Due to misconducts, he ended up serving a longer sentence, four years nine months.

[Heggland] said he was returned to Colorado with three months remaining of his five-year sentence. He said he served two months and was released on parole at the end of November 2001. He returned to Hawaii County to live with his father who had moved back to Hawaii. [Heggland] said he was on parole until November 2004. He said he was compliant with the requirement to call Parole Officer Reginald Une once a week. He disclosed that he tested positive for drugs a few times and was referred for treatment, but he was not revoked.[8]

(Footnote added.)

The State relied upon Heggland's Colorado conviction for Conspiracy to Commit Aggravated Robbery as the basis for seeking the imposition of a mandatory minimum sentence against Heggland as a repeat offender. In response to the presentence report, Heggland did not raise a good faith challenge to the validity of his prior Colorado conviction as required by step two of the sentencing procedure outlined in *Sinagoga*. He did not challenge the prior Colorado conviction as being uncounseled or as not pertaining to him. Indeed, much of the information in the presentence report regarding the Colorado conviction came from Heggland himself.

Heggland not only failed to challenge the validity of his prior Colorado conviction, he affirmatively stipulated, through his counsel, that "[a]t the time [Heggland] committed the offenses in the instant case, he had [a] prior felony conviction in Colorado (Department of Corrections No. 110596) for Conspiracy to Commit Aggravated Robbery." Heggland further stipulated through his counsel that "at the time of the present offense[s], he was on parole for a prior felony conviction in Colorado, uh, conspiracy to commit aggravated robbery until November 21st, 2004."

Despite Heggland's failure to challenge the validity of his prior Colorado conviction and his affirmative stipulations regarding that conviction, the circuit court denied the

---

8. A supplement to Heggland's presentence report stated that according to Parole Officer Reginald Une, Heggland was on parole for the Arizona offenses of Armed Robbery and First Degree Burglary and the Colorado offense of Conspiracy to Commit Aggravated Robbery. His "Control and Discharge date (maximum term)" for the Arizona offenses was June 3, 2002, and for the Colorado offense was November 21, 2004.

State's motion for the imposition of a mandatory minimum sentence. Citing *Freitas* and *Afong*, the circuit court based its ruling on the ground that "[t]he State has failed to prove that the defendant was represented by counsel or that the defendant knowingly or intelligently waived representation at the time of the prior conviction." At a subsequent hearing, the circuit court stated that it was denying the State's motion because the State had failed to establish Heggland's "purported Colorado conviction by satisfactory evidence."[9]

The circuit court erred in denying the State's motion based on the State's alleged failure to prove that Heggland was represented by counsel at the time of his prior conviction or to prove the prior conviction by satisfactory evidence. Under *Afong* and *Sinagoga*, Heggland had conceded the validity of the prior Colorado conviction by failing to raise a good-faith challenge that it was uncounseled or did not pertain to him. He also affirmatively stipulated that he had a prior felony conviction in Colorado for Conspiracy to Commit Aggravated Robbery and was on parole for that offense when he committed the instant Hawai'i offenses. Thus, there was no need for the State to prove by evidence beyond Heggland's presentence report or stipulations that Heggland's prior conviction was valid.

## III.

The record shows that although Heggland did not challenge the validity of his prior Colorado conviction, he did oppose the imposition of a mandatory minimum term of imprisonment pursuant to HRS § 706–606.5. Heggland's opposition was based on his contention that his instant Hawai'i offense of Promoting a Dangerous Drug in the Third Degree was not committed close enough in time to his Colorado conviction to fall within the time frame required by HRS § 706–606.5(2)(f).[10] In order to impose a mandatory minimum term based on Heggland's prior Colorado conviction, Heggland's instant Hawai'i felony offense must have been committed "within the maximum term of imprisonment possible after a prior felony offense from another jurisdiction." HRS § 706–606.5(2)(f). The circuit court did not rule on Heggland's ground for opposing the imposition of the mandatory minimum term because it found that Heggland's prior conviction had not been established.[11]

We conclude that Heggland's ground for opposing the mandatory minimum term is without merit and that the circuit court erred in failing to impose a mandatory minimum term pursuant to HRS § 706–606.5. The State introduced in evidence a certified copy of the Information filed against Heggland in the District Court, El Paso County, Colora-

9. The Circuit Court of the Third Circuit (the circuit court) subsequently entered a written order denying the State's motion to impose a mandatory minimum term of imprisonment that contained the following two findings of fact:

1. There is insufficient evidence that Defendant was convicted of a class four felony in Colorado; and
2. There is insufficient evidence that Defendant was represented by counsel, or waived his right to counsel, at the time of the alleged Colorado conviction.

10. Of the two offenses to which Heggland pleaded guilty in this case, only the offense of Promoting a Dangerous Drug in the Third Degree provided a basis for applying HRS § 706–606.5.

11. At a September 29, 2005 hearing, Heggland suggested that he might also contest the applicability of a mandatory minimum term on the ground that his Colorado offense may have been "a juvenile offense" and not "a conviction."

However, he abandoned that ground. After the September 29, 2005 hearing, Heggland entered into a stipulation with the State that he had a "prior *felony conviction* in Colorado ... [for] conspiracy to commit aggravated robbery" and had been on parole for that conviction at the time of the present Hawai'i offense. In addition, at the December 7, 2005 hearing, Heggland made clear that his only ground for opposing the imposition of a mandatory minimum term was whether his Hawai'i offense was committed "within the maximum term of imprisonment possible" after his Colorado conviction as required by HRS § 706–606.5(2)(f). After Heggland's counsel recited Heggland's stipulations regarding the Colorado conviction, the following colloquy took place:

THE COURT: Okay. So the only question that I have—I think is left unresolved—is the maximum term for this particular offense [ (the Colorado conviction) ].
[DEFENSE COUNSEL]: Yes, Your Honor.
THE COURT: And isn't that a matter of law?
[DEFENSE COUNSEL]: Yes.

do. Count III of the Information charged that "on or about the 18th day of December, 1996," Heggland committed the offense of Conspiracy to Commit Aggravated Robbery, "[i]n violation of Colorado Revised Statutes [ (CRS) § ]18-2-201(1), as amended ..." The State also introduced into evidence a document that appears to be a certified abstract of Heggland's Colorado criminal record, which reflected Heggland's conviction for Conspiracy to Commit Aggravated Robbery, and a copy of the Colorado statute, CRS § 18-1.3-401, which sets forth Colorado's sentencing scheme for felony convictions. Heggland's parole officer in Hawai'i testified that the "controlling discharge date" for Heggland's parole for the Colorado conviction was November 21, 2004 and that until that date, Heggland could have been sent back to prison for violating his parole.

Based on our review of the applicable Colorado law, Heggland's instant Hawai'i offense of Promoting a Dangerous Drug in the Third Degree was committed close enough in time after his Colorado conviction to fall within the time frame necessary for the imposition of a mandatory minimum sentence under HRS § 706-606.5(2)(f). Under Colorado's sentencing scheme relevant to Heggland's Colorado conviction, a defendant convicted of a felony was subject to penalties that included both a presumptive range of imprisonment and a mandatory parole term. CRS § 18-1-105(1)(a)(V)(A) (1996).[12] A defendant sentenced to incarceration was required to serve an additional period of mandatory parole, the length of which depended on the class of felony committed by the defendant. Id.[13] The period of the mandatory

parole could not be waived or suspended by either the trial court or the offender. CRS § 18-1-105(1)(a)(V)(B) (1996). The state board of parole, however, had the authority to discharge the offender at any time during the parole period upon a determination that he or she had been sufficiently rehabilitated and could no longer benefit from parole supervision. Id.; CRS § 17-22.5-403(8) (1996).

Heggland's offense of Conspiracy to Commit Aggravated Robbery was a class 4 felony under Colorado law. CRS §§ 18-4-302 and 18-2-206 (1996). It carried a presumptive sentencing range of two to six years of imprisonment and a mandatory parole term of three years. CRS § 18-1-105(1)(a)(V)(A).[14] The presentence report shows that Heggland was sentenced to five years of incarceration and three years of mandatory parole for his Colorado conviction.

Colorado's mandatory parole is different than parole under traditional sentencing schemes. Under traditional sentencing schemes, an inmate who is released on parole exchanges a portion of his or her prison term for a period of non-imprisonment custody. *Craig v. People*, 986 P.2d 951, 958 n. 3 (Colo. 1999). This is basically how parole operates in Hawai'i. In Colorado, however, even a prisoner who serves his or her entire prison sentence is still subject to the conditions of parole for the additional mandatory period. *Id.* The mandatory parole term can be revoked and the defendant reincarcerated for any period of time remaining on the defendant's parole term. CRS § 17-22.5-403(8). Because mandatory parole is part of the defendant's sentence, reincarceration after a

---

**12.** Colorado Revised Statutes (CRS) § 18-1-105 (1996) was subsequently amended in ways not material to this appeal and was relocated to CRS § 18-1.3-401.2002 Colo. Sess. Laws, Ch. 318, § 2.

**13.** CRS § 18-1-105(1)(a)(V)(D) (1996) provided, in relevant part, as follows:

The mandatory period of parole imposed pursuant to sub-subparagraph (A) of this subparagraph (V) shall commence immediately upon the discharge of an offender from imprisonment in the custody of the department of corrections. If the offender has been granted release to parole supervision by the state board of parole, the offender shall be deemed to have discharged the offender's sentence to imprison-

ment provided for in sub-subparagraph (A) of this subparagraph (V) in the same manner as if such sentence were discharged pursuant to law. When an offender is released by the state board of parole or released because the offender's sentence was discharged pursuant to law, the mandatory period of parole shall be served by such offender.

**14.** Under CRS §§ 18-1-105(6) and (9) (1996), the trial court had the authority to impose a sentence of incarceration up to twice the maximum term authorized by the presumptive range if it concluded that extraordinary aggravating circumstances were present.

388

parole violation is not a new prison sentence but incarceration on an already imposed sentence. *People v. Barber,* 74 P.3d 444, 446 (Colo.Ct.App.2003).

It is undisputed that Heggland was still serving the mandatory parole term for his Colorado conviction at the time that he committed the instant Hawai'i felony of Promoting a Dangerous Drug in the Third Degree. Until Heggland's mandatory period of parole expired, he could have been sent back to prison for a parole violation. We therefore conclude that his instant Hawai'i felony was committed "within the maximum term of imprisonment possible" after his Colorado conviction, as required by HRS § 706–606.5(2)(f).

## CONCLUSION

For the foregoing reasons, we vacate the sentence portion of the Judgment and remand for resentencing consistent with this opinion.

