315 P.3d 720

STATE of Hawai'i, Respondent/Plaintiff–
Appellee,

v.

Stanley S.L. KONG,
Petitioner/Defendant–Appellant.

No. SCWC–11–0000393.

Supreme Court of Hawai'i.

Dec. 10, 2013.

Samuel G. MacRoberts, for petitioner.

Renee Ishikawa Delizo, for respondent.

RECKTENWALD, C.J., NAKAYAMA, J., and Circuit Judge AYABE, in place of POLLACK, J., recused, with ACOBA, J., dissenting separately, with whom McKENNA, J., joins.

Opinion of the Court by
RECKTENWALD, C.J.

Stanley S.L. Kong was charged with Promoting a Dangerous Drug in the Second Degree and Prohibited Acts Related to Drug Paraphernalia. He was admitted into the Maui Drug Court program, but subsequently

---

1. The Honorable Shackley F. Raffetto presided.

2. HRS § 712–1242 (Supp.2007) provides, in relevant part:

 (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
 . . . .
 (b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:

self-terminated from the program. The Circuit Court of the Second Circuit then found Kong guilty as charged, and sentenced him to a ten year indeterminate term of imprisonment and a five year indeterminate term of imprisonment, respectively.[1] The circuit court ordered that the terms run consecutively, for a total of 15 years, due to Kong's history of "extensive criminality."

In his application, Kong argues that the circuit court's statement regarding his "extensive criminality" was insufficient to justify his consecutive sentence based on the requirements set forth in State v. Hussein, 122 Hawai'i 495, 229 P.3d 313 (2010). He also argues that his sentence constitutes plain error because it was based on crimes he did not commit. Finally, Kong argues that the colloquy conducted by the circuit court regarding his self-termination from the Drug Court program was insufficient to establish that he knowingly, voluntarily, and intelligently waived his right to a termination hearing.

For the reasons set forth below, we reject each of Kong's arguments. We affirm the judgment of the Intermediate Court of Appeals, which affirmed the circuit court's judgment of conviction and sentence.

## I. Background

The following factual background is taken from the record on appeal.

### A. Circuit Court Proceedings

Kong was charged with Promoting a Dangerous Drug in the Second Degree in violation of Hawai'i Revised Statutes (HRS) § 712–1242,[2] and Prohibited Acts Related to Drug Paraphernalia in violation of HRS § 329–43.5.[3]

 (i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]
 . . . .
 (2) Promoting a dangerous drug in the second degree is a class B felony.

3. HRS § 329–43.5 (1993) provides, in relevant part:
 (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia

Kong subsequently petitioned for admission into the Maui Drug Court program. Kong signed a petition for admission, in which he waived his right to a trial, confirmed his understanding that the charges against him would be dismissed if he successfully completed the program, and confirmed his understanding that he would proceed to a stipulated facts trial if he was unsuccessful in the program. He also admitted to the charges against him.

That same day, the circuit court held a hearing, in which it orally informed Kong of the legal rights that he would surrender if he chose to enter the Drug Court program. The circuit court also reviewed the petition with Kong and explained to Kong that he would be terminated from the program if he violated any of the rules set forth in the Drug Court Program Admission Agreement, which Kong also had signed. The circuit court conducted a detailed colloquy with Kong regarding the rights he was waiving by agreeing to enter the program, including his right to a trial on the charges and the rights associated with a public trial. The circuit court confirmed that Kong admitted to the charges and wanted to proceed. The circuit court found that Kong voluntarily, knowingly, and intelligently waived his rights as indicated in the petition, and admitted Kong into the program.

Kong subsequently attended numerous status hearings over a period of approximately six months. However, at a January 26, 2011 status hearing,[4] Kong's counsel, a Deputy Public Defender (DPD) indicated her understanding that the Drug Court program was recommending that Kong be terminated from the program. The DPD stated that Kong instead wanted to self-terminate from the program. Kong's Drug Court treatment team confirmed that Kong had failed to appear for a urinalysis, treatment group, and scheduled status hearing, and recommended

that the court set a termination hearing. The circuit court addressed Kong:

[Mr. Kong], although the treatment team has recommended a termination hearing, I'm going to take you through some questions that … are similar to the questions I asked of someone else who indicated they wanted to terminate, or that person wanted to terminate.

You have the right to have a hearing on that. Just because someone recommends termination, it doesn't mean it's automatic. And at that hearing the Government would basically have to present an appropriate basis for terminating you from the drug court program. If the Court determines that that's not the appropriate course, then you can remain in the program and participate in the program. If, on the other hand, it is determined that termination is the appropriate result, then you would be terminated from the program.

But what I want to emphasize is that what's important here is that you understand that you have a right to have a hearing on that, and you have the right to have your attorney present and represent you during that hearing. So in addition to what the Prosecutor might do at the hearing and the burden that the Prosecution would carry, you have the right to have your attorney present whatever you would like your attorney to present during the termination hearing and have a fair hearing on that before that decision is made.

Kong acknowledged that he understood what the circuit court explained. The circuit court also explained to Kong the consequences of termination:

And, now, at a termination hearing, if you are terminated, you are a Track II participant, so what would happen is your—your case would proceed to what's called a stipulated facts trial, in other words, where the facts are agreed on. So if you get past the point of termination, for

to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is

guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. The Honorable Joseph E. Cardoza presided.

example, if you self-terminate, for example, or if it's determined that you should be terminated, then the stipulated facts trial is basically a very short trial. Because essentially what you will have done already is admitted to all of the parts of the charge. So that's presented and the trial doesn't even last a minute and you are found guilty as charged. You understand that?

Kong again acknowledged that he understood what the circuit court explained. The circuit court then stated, "And the reason I'm asking you that question is I want to make sure you understand ... what consequences flow from the decision to self-terminate." (Emphasis added). The circuit court again asked Kong if he understood the consequences of a decision to self-terminate from the Drug Court program, and Kong responded, "Yeah, I understand in part. Yes, I do." The circuit court then explained:

Okay. So, basically there's no hearing. You give up the right to a termination hearing, number one, if you self-terminate; number 2, you move onto a stipulated facts trial where it's almost virtually certain, unless your attorney files any constitutionally based motions on your behalf, it's virtually certain that you will be found guilty as charged. And if the motions are filed, if there are any motions that could be filed, then those are heard. But if those are not successful, then that leads to a stipulated facts trial and that would ... essentially result in a finding of guilty. Do you understand all of that?

Kong responded, "Yeah. Yeah." Kong then stated, "I want to self-terminate," but indicated that "just for the record" that "[u]p until this point the Public Defender's Office was, to my understanding, was never allowed to represent me in any felony cases because of conflict of interest in the past. They represented people who testified against me." The DPD stated:

I know [ ] Kong wanted to raise this to the Court today to preserve the issue, just to have it be on the record. And we did have this conversation about what appears to be a prior conflict with the Public De-

fender's Office with [ ] Kong as a juvenile in First Circuit on Oahu.

. . . .

[I]n looking in our data base, closed and opened files, there was no such conflict, and we were never told of a conflict. And I did raise the issue, and we can continue to talk about whether [Kong] wants to file a motion to withdraw, and that would be fine. But further discussion can be had, and I do understand that [ ] Kong still wanted to proceed with this self-termination, but possibly maybe with a new attorney.

Kong then stated that he "wanted to state [the possible conflict] on the record, and then still proceed with the termination." The circuit court was hesitant to proceed with termination in light of Kong's desire to preserve for appeal the issue of a possible conflict of interest. Accordingly, the circuit court set a hearing for a motion to withdraw counsel for February 3, 2011, and a termination hearing for March 7, 2011.

Kong ultimately did not file a motion for withdrawal and substitution of counsel pertaining to any alleged conflict of interest in relation to the circuit court proceedings. At the February 3, 2011 hearing,[5] the issue of withdrawal of counsel was not addressed. Instead, the following exchange occurred at the beginning of the hearing:

[DPD]: Good morning, your Honor. [The DPD] on behalf of [ ] Kong who is present, ready to self-terminate from the drug court program. Although he did benefit from the program and he would like to continue, he understands and would like to self-terminate in order to speed up the process.

THE COURT: Okay.

[Kong], is that right?

[Kong]: Yes, your Honor.

THE COURT: You want to self-terminate from the program?

[Kong]: Yes, your Honor.

THE COURT: Is you mind clear today about saying that?

5. The Honorable Shackley F. Raffetto presided.

[Kong]: Yes, it is.

THE COURT: Are you taking any medicines or drugs?

[Kong]: I'm not.

THE COURT: All right.

The Court finds the defendant voluntarily, knowingly, and intelligently terminates from the adult drug court program.

We can go ahead with the stip facts trial then[.]

The circuit court determined that Kong was guilty as charged on all counts.

A sentencing hearing was held approximately two months later. At the hearing, the DPD indicated, "[W]e are prepared to proceed with sentencing. We have received the pre-sentence investigation [ (PSI) ] report. There are no changes at this time." (Emphasis added). The DPD requested that the circuit court consider sentencing Kong to "probation with long term treatment[.]" However, sentencing was continued because there was apparent confusion over whether one of the charges had been reduced.

At the continued sentencing hearing,[6] the DPD indicated that "Kong does not want to stipulate to the contents of the [PSI] report in this case[,]" to which the circuit court responded, "That's fine." The State then clarified that the charges had not been reduced. The DPD requested a sentence of probation or, alternatively, concurrent sentences.

The State then stated:

We will ask the Court to impose the prison term. [Kong] has previously served five and ten year prison terms, and his parole was revoked repeatedly in '93, '99, 2001, 2002. He was given a chance as a high risk candidate for drug court, and he just skipped out. So he's not probation eligible and would just ask that you impose the prison term at this point.

Kong stated:

... I would like to thank the Court for giving me the opportunity to participate in drug court at that time. There's only been two judges who has ever given me a

chance, Judge Marks and yourself, so that much I'm grateful for. Sorry I wasn't able to complete it and maybe waste the taxpayer's money. But, you know, hopefully on the path that I take now I can make better decisions, if the scenario like that presents itself to me again.

The circuit court then sentenced Kong:

Taking into consideration all of the factors set forth in [HRS §] 706–606, including the extensive record of the defendant, which includes six burglary convictions, ... ten felonies, which represents a lot of harm in our community.

The Court is going to impose the following sentence in this matter. The defendant will be committed to the care and custody of the Director of the Department of Public Safety for a period of ten years on Count 1, five years on Count 2.

. . . .

In view of his extensive criminality, the Court is going to make these counts run consecutive for a total of fifteen years, mittimus forthwith, full credit for time served.

I will order that he be given an opportunity to participate in the Cash Box drug treatment program at the earliest convenience of the Department of Public Safety.

Thereafter, the circuit court entered its Judgment of Conviction and Sentence, and Kong timely filed a notice of appeal.

**B. Appeal**

On appeal, Kong raised three points of error: (1) whether the circuit court erred in imposing consecutive terms of imprisonment without adequately articulating a rationale; (2) whether the circuit court violated Kong's due process rights by basing its sentence on certain crimes set forth in the PSI report, specifically crimes in Cr. No. 92–0138 that Kong alleged were "vacated, remanded, and ultimately dismissed"; and (3) whether the circuit court erred by terminating Kong from the Drug Court program without conducting an on-the-record colloquy advising Kong of

---

6. The Honorable Shackley F. Raffetto presided.

the rights he would relinquish by self-terminating.

In its answering brief, the State argued that the circuit court "clearly stated the specific fact of Kong's extensive criminal record was the reason for its imposition of consecutive sentencing for the protection of the community." The State then argued that the circuit court properly considered the information contained in the PSI report. Specifically, the State argued that Kong did not challenge the information in the PSI report in the circuit court and, in any event, the circuit court did not plainly err in sentencing Kong based on his "extensive criminal record in general, and not specifically" the alleged inaccurate convictions. Finally, the State argued that the circuit court properly terminated Kong from the Drug Court program.

In a published opinion, the ICA held that the circuit court did not abuse its discretion in sentencing Kong to consecutive terms of imprisonment. *State v. Kong*, 129 Hawai'i 135, 295 P.3d 1005 (App.2013). The ICA determined:

> Here, the Circuit Court did not abuse its discretion by sentencing Kong to consecutive terms of imprisonment pursuant to HRS § 706–668.5 because it considered the factors set forth in HRS § 706–606. The Circuit Court explained its reasoning before imposing its sentence, stating, "Taking into consideration all of the factors set forth in [HRS] Section 706–606, including the extensive record of the defendant, which includes six burglary convictions . . . ten felonies, which represents a lot of harm in our community." The Circuit Court further stated, "In view of [Kong's] extensive criminality, the Court is going to make these counts run consecutive for a total of fifteen years[.]"
>
> Kong's "extensive record" and the fact that he caused "a lot of harm in our community" are specific circumstances that led the Circuit Court to conclude that a consecutive sentence was appropriate in this case. Given these circumstances, the Circuit Court likely concluded that Kong was "dangerous to the safety of the public, or poses an unacceptable risk of re-offending[.]" *Hussein*, 122 Hawai'i at 509, 229

P.3d at 327. In fact, Kong had re-offended, admitting that he had used drugs while participating in the MDC program. Kong had been given a second chance when he was allowed to continue in the [Drug Court] program after relapsing. Yet, Kong decided to self-terminate from the program, suggesting that "rehabilitation appears unlikely due to his [ ] lack of motivation and a failure to demonstrate any interest in treatment[.]" *Hussein*, 122 Hawai'i at 509, 229 P.3d at 327. These specific circumstances support the conclusion that the Circuit Court's "decision to impose consecutive sentences was deliberate, rational, and fair." *Hussein*, 122 Hawai'i at 510, 229 P.3d at 328.

*Id.* at 141, 295 P.3d at 1011 (footnotes omitted).

The ICA also held that the circuit court properly considered Kong's PSI report. *Id.* at 141–43, 295 P.3d at 1011–13. Citing this court's opinion in *State v. Heggland*, 118 Hawai'i 425, 439–40, 193 P.3d 341, 355–56 (2008), the ICA determined that Kong "conceded his prior convictions" because "each conviction listed may be used against defendant except those as to which the defendant timely responds with a good faith challenge on the record that the prior criminal conviction was . . . not against the defendant." *Kong*, 129 Hawai'i at 143, 295 P.3d at 1013. The ICA further held that these circumstances "do not rise to the level of plain error" inasmuch as the circuit court based its sentence on Kong's "extensive criminality" and not specifically on the convictions in Cr. No. 92–0138. *Id.*

Finally, the ICA held that the circuit court properly terminated Kong from the Drug Court program because, under the totality of the circumstances, Kong voluntarily and intelligently self-terminated from the Drug Court program, and waived his right to a terminating hearing. *Id.* at 143–45, 295 P.3d at 1013–15.

Kong timely filed an application for writ of certiorari. The State did not file a response.

## II. Standards of Review

### A. Sentencing

This court has stated,

A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Rivera,* 106 Hawai'i 146, 154–55, 102 P.3d 1044, 1052–53 (2004) (format altered) (quotation marks, brackets, and citations omitted), overruled on other grounds by *State v. Maugaotega,* 115 Hawai'i 432, 442–43, 168 P.3d 562, 572–73 (2007); *State v. Aplaca,* 96 Hawai'i 17, 25, 25 P.3d 792, 800 (2001).

■ "The weight to be given the factors set forth in HRS § 706–606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." *State v. Akana,* 10 Haw.App. 381, 386, 876 P.2d 1331, 1334 (1994).

**B. Plain Error**

■ Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (2012) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Staley,* 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999) (citation omitted).

■ The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Nichols,* 111 Hawai'i 327, 334, 141 P.3d 974, 980 (2006) (quoting *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)). An appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *Nichols,* 111 Hawai'i at 335, 141 P.3d at 982 (quoting *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993)).

**III. Discussion**

**A. The circuit court did not abuse its discretion in sentencing Kong to consecutive terms of imprisonment**

■ Kong argues that the circuit court's statement regarding his "extensive criminality" was insufficient to justify the imposition of consecutive sentences and did not meet the requirements of *Hussein.* As explained below, the circuit court did not abuse its discretion in sentencing Kong to consecutive terms based on Kong's "extensive criminality."

A sentencing court has discretion to order multiple terms of imprisonment to run concurrently or consecutively. HRS § 706–668.5(1) (Supp.2008) ("If multiple terms of imprisonment are imposed on a defendant ... the terms may run concurrently or consecutively."). "The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606." HRS § 706–668.5(2) (1993). HRS § 706–606 (1993) provides:

The court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

(a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

 "[A]bsent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." *Hussein*, 122 Hawai'i at 503, 229 P.3d at 321 (citations and brackets omitted). Nevertheless, in *Hussein*, this court determined that "circuit courts must state on the record at the time of sentencing the reasons for imposing a consecutive sentence." *Id.* at 510, 229 P.3d at 328 (emphasis added). This court explained:

Such a requirement serves dual purposes. First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate. An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public.

Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors. It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term. Hence, reasons confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair.

*Id.* at 509-10, 229 P.3d at 327-28.

In this case, the circuit court explained its reasoning for imposing its sentence:

Taking into consideration all of the factors set forth in [HRS § ] 706-606, <u>including the extensive record of the defendant, which includes six burglary convictions, ... ten felonies, which represents a lot of harm in our community.</u>

The Court is going to impose the following sentence in this matter. The defendant will be committed to the care and custody of the Director of the Department of Public Safety for a period of ten years on Count 1, five years on Count 2.

. . . .

In view of his <u>extensive criminality,</u> the Court is going to make these counts run consecutive for a total of fifteen years, mittimus forthwith, full credit for time served.

I will order that he be given an opportunity to participate in the Cash Box drug treatment program at the earliest convenience of the Department of Public Safety.

(Emphasis added).

 Kong characterizes the circuit court's justification for imposing consecutive terms of imprisonment as "terse, conclusory, and last[ing] two words." However, the sentencing court is not required to articulate and explain its conclusions with respect to every factor listed in HRS § 706-606. *Id.* at 518-19, 229 P.3d at 337-38. Rather, "it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." *Id.* at 503, 229 P.3d at 321 (citations omitted). Thus, the sentencing court is required to articulate its reasoning only with respect to those factors it relies on in imposing consecutive sentences. *Id.* at 509-10, 229 P.3d at 327-28.

*Hussein* set forth two purposes served by requiring the court to state on the record the reasons for imposing a consecutive sentence: (1) identifying the facts or circumstances within the range of statutory factors that the

court considered, and (2) confirming for the defendant, the victim, the public, and the appellate court that the decision was deliberate, rational, and fair. *Id.* Here, the circuit court's rationale satisfied the dual purposes set forth in *Hussein.*

First, the circuit court's statement regarding Kong's "extensive criminality" identified the specific facts or circumstances within the range of statutory factors that the court considered in imposing a consecutive sentence. *See id.* at 509, 229 P.3d at 327 (requiring that the sentencing court state "the specific circumstances that led the court to impose sentences consecutively in a particular case"). Indeed, the circuit court's statement regarding Kong's "extensive criminality" relates directly to the first of the relevant statutory factors listed in HRS § 706–606(1): "the history and characteristics of the defendant[.]"

Second, the circuit court's statement regarding Kong's extensive criminality also "provide[d] the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors[,]" and confirms for Kong, the public, and this court that the decision to impose consecutive sentences was deliberate, rational, and fair. *Hussein,* 122 Hawai'i at 509–10, 229 P.3d at 327–28. Put simply, Kong's "extensive criminality" provided a rational and fair basis within the range of statutory factors for the imposition of consecutive sentences.

▮ However, Kong also asserts that the ICA erred in providing a "post hoc justification" for the circuit court's rationale when it speculated as to what the circuit court "likely concluded[.]" Kong specifically refers to the following paragraph of the ICA's opinion:

Given these circumstances, the Circuit Court likely concluded that Kong was "dangerous to the safety of the public, or poses an unacceptable risk of re-offending[.]" In fact, Kong had re-offended, admitting that he had used drugs while participating in the [Drug Court] program. Kong had been given a second chance when he was allowed to continue in the [Drug Court] program after relapsing. Yet, Kong decided to self-terminate from the program, suggesting that "rehabilitation appears unlikely due to his [ ] lack of

motivation and a failure to demonstrate any interest in treatment[.]" These specific circumstances support the conclusion that the Circuit Court's "decision to impose consecutive sentences was deliberate, rational, and fair."

*Kong,* 129 Hawai'i at 141, 295 P.3d at 1011 (citations omitted) (emphasis added).

In this paragraph, it appears that the ICA attempted to relate the circuit court's factual considerations to the examples given in *Hussein* that would justify the circuit court's imposition of a consecutive sentence:

It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term.

*Hussein,* 122 Hawai'i at 509, 229 P.3d at 327.

The ICA's determination that "the [c]ircuit [c]ourt likely concluded that Kong was 'dangerous to the safety of the public, or poses an unacceptable risk of re-offending' " and that rehabilitation appeared unlikely arguably could be read as speculating as to the circuit court's reasoning. Such speculation would be contrary to the holding in *Hussein* that the circuit court justify its decision "on the record at the time of sentencing." However, when read in context, it appears the ICA was not speculating regarding the circuit court's reasoning, but rather attempting to link the circuit court's express reasoning to the examples given in *Hussein.*

To the extent doing so constituted error by the ICA, such error does not warrant vacating Kong's conviction. *Hussein* does not require the circuit court to address the specific "example[s]" discussed in the opinion. Indeed, requiring the sentencing court to address these "example[s]" would introduce sentencing factors in excess of the statutory factors set out by the legislature. *Compare id. with* HRS § 706–606. Although *Hussein* required that the court articulate its reasons

for imposing a consecutive sentence on the record at the time of sentencing, the examples it provided were illustrative. *Id.* at 509, 229 P.3d at 327. The critical question remains whether the circuit court articulated a "meaningful rationale" for the sentence in light of the factors set forth in HRS § 706-606. In this case, the circuit court's reason, i.e., Kong's "extensive criminality[,]" sufficiently justified the imposition of a consecutive sentence under HRS § 706-606.[7]

Accordingly, the circuit court did not abuse its discretion in imposing a consecutive sentence in this case.

## B. The circuit court properly considered Kong's PSI report

Kong contends that "[t]he circuit court based its sentence ... on crimes that were vacated almost fifteen years earlier. The ICA affirmed the sentence by extending the presumption of validity to those non-existent convictions. The ICA gravely erred by upholding a consecutive prison sentence based on crimes that [ ] Kong did not commit." Kong specifically argues that the procedure set out in *State v. Sinagoga*, 81 Hawai'i 421, 918 P.2d 228 (App.1996), for challenging convictions contained in a PSI report should not "extend to cases where convictions did not exist at the time of sentencing," and alternatively, that *Sinagoga* should be overturned. As explained below, Kong's arguments are without merit.

▉▉ In *Sinagoga*, the ICA considered whether a defendant bears the burden of challenging prior criminal convictions listed in the PSI report that the defendant contends are invalid. *Id.* at 444, 918 P.2d at 251. The ICA concluded that a defendant does bear such a burden in "ordinary sentencing

situations."[8] *Id.* Specifically, the ICA held that any convictions contained in a PSI report "may be used against the defendant except those as to which the defendant timely responds with a good faith challenge on the record that the prior criminal conviction was (1) uncounseled, (2) otherwise invalidly entered, and/or (3) not against the defendant." *Id.* at 444–45, 918 P.2d at 251–52. The ICA's conclusion was based on the rationale that "the defendant, more than anyone else, knows whether or not his or her prior criminal conviction was uncounseled, otherwise invalid, or irrelevant." *Id.* at 445, 918 P.2d at 252. Accordingly, "if the presentence report states that the defendant has a prior criminal conviction, and the defendant does not respond to that report with a good faith challenge on the record ... that prior criminal conviction is reliable for all sentencing purposes." *Id.*

The ICA set forth the following procedure for trial courts to follow in cases "where ordinary sentencing procedures are applicable and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for the imposition or enhancement of a prison sentence"[9]:

Step one, the court shall furnish to the defendant or defendant's counsel and to the prosecuting attorney a copy of the presentence report, HRS § 706–604, and any other report of defendant's prior criminal conviction(s). Step two, if the defendant contends that one or more of the reported prior criminal convictions was (1) uncounseled, (2) otherwise invalidly entered, and/or (3) not against the defendant, the defendant shall, prior to the sentencing, respond with a good faith challenge on the record stating, as to each challenged

---

7. To be clear, we are neither overruling nor "upend[ing]" this court's opinion in *Hussein*. *See* dissenting opinion at 115–16, 315 P.3d at 741–42. *Hussein* clearly stands for the proposition that a sentencing court must provide a "meaningful rationale" on the record to justify its imposition of a sentence. 122 Hawai'i at 509–10, 229 P.3d at 327–28. We expressly reaffirm this holding. Here, we merely hold that, under the circumstances of this case, the circuit court did not abuse its discretion in determining

that Kong's "extensive criminality" justified the imposition of a consecutive sentence.

8. "Ordinary sentencing situations" include mandatory minimums, eligibility for probation, and consecutive sentences, but exclude extended term sentencing. *Id.* at 444, 918 P.2d at 251.

9. This court adopted and applied the *Sinagoga* test in *Heggland*, with one modification, discussed infra. 118 Hawai'i at 439–41, 193 P.3d at 355–57.

conviction, the basis or bases for the challenge. Step three, prior to imposing the sentence, the court shall inform the defendant that (a) each reported criminal conviction that is not validly challenged by the defendant is defendant's prior, counseled, validly entered, criminal conviction, and (b) a challenge to any reported prior criminal conviction not made by defendant before sentence is imposed may not thereafter, absent good cause, be raised to attack the court's sentence. Step four, with respect to each reported prior criminal conviction that the defendant challenges, the HRE [(Hawaii Rules of Evidence)] shall apply, and the court shall expressly decide before the sentencing whether the State satisfied its burden of proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true. Step five, if the court is aware of the defendant's prior uncounseled or otherwise invalid criminal conviction(s), it shall not impose or enhance a prison sentence prior to expressly stating on the record that it did not consider it or them as a basis for the imposition or enhancement of a prison sentence.

*Id.* at 447, 918 P.2d at 254 (emphasis added).

▆▆▆ The *Sinagoga* framework is applicable to this case because this is a case where "ordinary sentencing procedures are applicable and there [was] a possibility that the court may use [Kong's] prior conviction(s) as a basis for the imposition or enhancement of a prison sentence." *Id.* at 447, 918 P.2d at 254. Here, step one of the *Sinagoga* framework was satisfied because Kong was provided with a copy of the PSI report, which contained a list of his prior convictions. Kong was then required to "respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge." *Id.*

However, Kong did not avail himself of the opportunity to controvert the PSI report, which he now argues listed convictions that

were allegedly dismissed. At the April 7, 2011 sentencing hearing, Kong's counsel stated, "We have received the [PSI] report. There are no changes at this time." At the continued sentencing hearing on April 11, 2011, Kong's counsel simply indicated that Kong did not want to stipulate to the contents of the PSI report. However, neither Kong nor his counsel objected to any of the convictions listed in the PSI report. ·*See Heggland,* 118 Hawai'i at 432 n. 4, 193 P.3d at 348 n. 4 (noting that the defendant must "respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge." (emphasis added)); *cf. State v. Fox,* 70 Haw. 46, 55, 760 P.2d 670, 675 (1988) ("Fairness to the trial court impels a recitation in full of the grounds supporting an objection to the introduction of inadmissible matters. Otherwise, the court would be denied the opportunity to give the objection adequate consideration and rule correctly."). Because Kong failed to raise a good faith challenge to his convictions in the circuit court, the circuit court did not err in relying on the PSI report.[10] *Sinagoga,* 81 Hawai'i at 445, 918 P.2d at 252 ("[I]f the presentence report states that the defendant has a prior criminal conviction, and the defendant does not respond to that report with a good faith challenge on the record ... that prior criminal conviction is reliable for all sentencing purposes.").

Nevertheless, Kong argues that *Sinagoga* is inapplicable because this court limited the applicability of the *Sinagoga* framework in *State v. Veikoso,* 102 Hawai'i 219, 74 P.3d 575 (2003), and *Heggland.* In *Veikoso,* this court considered whether a defendant may, in trial proceedings on a subsequent offense, collaterally attack a prior conviction that is the result of an allegedly invalid plea. 102 Hawai'i at 224–27, 74 P.3d at 581–83. There, the defendant was convicted of habitually driving under the influence (DUI) of intoxicating liquor, an offense which requires that

---

**10.** In this case, the *Sinagoga* analysis ceased at step two because the defendant failed to raise a challenge to the convictions listed in the PSI report. Because Kong failed to challenge the PSI report, the circuit court had no reason to proceed with the next steps in the *Sinagoga* anal-

ysis. *See, e.g., Heggland,* 118 Hawai'i at 439–41, 193 P.3d at 355–57 (not reaching steps three through five after concluding that defendant failed to raise a good-faith challenge to his prior conviction under *Sinagoga* ).

the defendant be convicted of three or more prior DUI offenses within a specific period. *Id.* at 220, 74 P.3d at 576. The defendant sought to dismiss the habitual DUI charge on the ground that his prior, predicate DUI convictions were invalid because he had not received a proper colloquy prior to entering his plea. *Id.* The defendant's motion to dismiss was denied, and he subsequently pled guilty to habitual DUI.

On appeal, this court noted that none of the defendant's prior DUI convictions had been vacated at the time he pled guilty to habitual DUI. *Id.* at 223, 74 P.3d at 579. This court concluded that constitutional challenges to the validity of prior convictions must be raised either in a direct appeal or collaterally through a HRPP Rule 40 proceeding, rather than in proceedings on a subsequent offense. *Id.* at 226, 74 P.3d at 583. In a footnote, this court "recognize[d] the tension" between its holding and *Sinagoga*. *Id.* at 227 n. 8, 74 P.3d at 583 n. 8. This court acknowledged that *Sinagoga* allowed a defendant to challenge three types of convictions in a PSI report, i.e., those that are "(1) uncounseled, (2) otherwise invalidly entered, and/or (3) not against the defendant." *Id.* (emphasis in original) (brackets omitted). This court stated, "Because the 'otherwise invalidly entered' language in *Sinagoga* may be construed as permitting collateral attacks whenever the validity of a conviction is challenged, we emphasize, in light of our holding today, that this language should be disregarded." *Id.* at 227 n. 8, 74 P.3d at 583 n. 8.

Subsequently, in *Heggland,* this court adopted and applied the *Sinagoga* test to determine whether the defendant had raised a good-faith challenge to his prior conviction out of state on the ground the conviction was uncounseled. 118 Hawai'i at 439–41, 193 P.3d at 355–57. This court acknowledged the bases for challenging a prior conviction recognized by *Sinagoga* and modified by *Veikoso* (i.e., the conviction being uncounseled or not against the defendant). *Id.* at 440–42, 193 P.3d at 356–58. However, this court concluded that the defendant had not, in the trial court, raised a good faith challenge on either of these bases, and instead affirmatively stipulated to his prior conviction. *Id.* Ac-

cordingly, this· court concluded that the defendant's arguments were without merit. *Id.* In a footnote, this court also quoted the ICA opinion in *Heggland* for the proposition that *Veikoso* had modified *Sinagoga* to "limit a defendant's ability to collaterally attack a prior conviction[.]" *Id.* at 440, 193 P.3d at 356 (quoting *State v. Heggland,* 116 Hawai'i 376, 383 n. 7, 173 P.3d 523, 530 n. 7 (App. 2007)).

Neither *Veikoso* nor *Heggland* supports Kong's assertion that *Sinagoga* is inapplicable in the instant case. First, claims that a conviction has been vacated would appear to fall within the provision allowing challenges for convictions that are "not against the defendant," rather than those that are "otherwise invalidly entered." Indeed, a conviction that has been vacated is void, *see Black's Law Dictionary* 1688 (9th ed. 2009) (defining "vacate"), and thus is not a conviction "against the defendant."

Although Kong appears to argue that convictions "not against the defendant" are only those in which identity is challenged, he cites no authority for this proposition. Moreover, there is no logical reason for requiring a defendant to raise an identity challenge pursuant to the *Sinagoga* framework, but relieving a defendant of this burden for convictions that are vacated. Indeed, in both instances, "the defendant, more than anyone else, knows whether or not his or her prior criminal conviction was … irrelevant." *Sinagoga,* 81 Hawai'i at 445, 918 P.2d at 252.

Second, the sole purpose behind the limitation on *Sinagoga* set forth in *Veikoso* is not implicated in the instant case. That purpose was to prohibit collateral attacks on the validity of a prior conviction in proceedings for a subsequent offense. *Veikoso,* 102 Hawai'i at 227 n. 8, 74 P.3d at 583 n. 8. Here, Kong claims that his convictions in Cr. No. 92–0138 have already been "vacated, remanded, and dismissed[.]" Accordingly, this court's concerns regarding collateral attacks are not pertinent in the instant case.

Moreover, nothing in *Veikoso* or *Heggland* indicates that this court intended to relieve a defendant of the burden of challenging prior convictions in these circumstances. *See id.; see also Heggland,* 118 Hawai'i at 440, 193

P.3d at 356. Indeed, doing so would have the effect of requiring the State to prove the validity of each of the defendant's prior convictions at the time of sentencing or run the risk of having the sentence vacated on appeal, a proposition which this court has already rejected. *Heggland,* 118 Hawai'i at 441, 193 P.3d at 357 ("[T]he circuit court misinterpreted the five-step procedure outlined in *Sinagoga* by requiring the prosecution to prove the validity of Heggland's prior conviction in the absence of a good-faith challenge by Heggland.").

Accordingly, Kong was required to raise "a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge." *Heggland,* 118 Hawai'i at 432 n. 4, 193 P.3d at 348 n. 4. Because he did not do so, the circuit court did not err in relying on the PSI report.[11]

 Nor should this court utilize plain error review to address this issue despite Kong's failure to raise it in the circuit court. Although this court "may recognize plain error when the error committed affects substantial rights of the defendant," *Staley,* 91 Hawai'i at 282, 982 P.2d at 911 (citation omitted); *see* HRPP Rule 52(b), the alleged inaccuracy in the PSI report does not rise to the level of plain error because the record indicates that the circuit court based its imposition of a consecutive sentence on Kong's "extensive" criminal record as a whole and not solely on the specific convictions that

Kong alleges are invalid (Cr. No. 92–0138). In addition, the PSI report, which the circuit court considered in imposing its sentence, contained all of Kong's prior charges and convictions and not just those in Cr. No. 92–0138.[12] Under these circumstances—particularly where Kong was given ample time to review the PSI report, where he or his counsel failed to provide a good faith challenge on the record stating the bases for challenging the convictions listed in the PSI report, and where there was sufficient evidence to support the circuit court's determination that Kong had an "extensive" record of criminality—it cannot be said that Kong's substantial rights were affected by the circuit court's use of the PSI report.[13]

**C. Kong voluntarily and intelligently self-terminated from the Drug Court program, and waived his right to a termination hearing**

 Finally, Kong asserts that he did not voluntarily and intelligently waive his right to a termination hearing. Specifically, Kong asserts that the circuit court's colloquy prior to his self-termination at the February 3, 2011 hearing was not sufficient. Contrary to Kong's argument, and as set forth below, under the totality of the circumstances Kong voluntarily and intelligently self-terminated from the Drug Court program.

11. The dissent argues that the State and probation office would be "absolve[d]" of accountability and the defendant would "exclusively" bear the responsibility of ascertaining the accuracy of his or her criminal record. Dissenting opinion at 118, 315 P.3d at 744. However, under the holding of *Sinagoga,* 81 Hawai'i at 446, 918 P.2d at 253, once the defendant <u>raises</u> a good faith argument before the sentencing court, the prosecution still has the ultimate burden of "proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true."

12. The PSI report also indicates that Kong was convicted of <u>seven</u> felony burglaries. Thus, even excluding the burglary conviction in Cr. No. 92–0138, the circuit court would have been correct in noting that Kong's "extensive record" included "six burglary convictions." Although the vacated convictions in Cr. No. 92–0138 would mean that Kong was convicted of 8 total felonies, as opposed to the ten noted by the circuit court,

the PSI report nonetheless contained sufficient information for the circuit court to reasonably conclude that Kong had a history of "extensive criminality."

13. The dissent argues that Kong's due process rights were violated when the circuit court sentenced him using the convictions in Cr. No. 92–0138. Dissenting opinion at 120–21, 315 P.3d at 746–47. Kong, however, never asserted in his application that his due process rights were violated by the circuit court's use of the convictions listed in the PSI report. *See* Hawai'i Rules of Appellate Procedure Rule 40.1(d)(1) ("Questions not presented according to this paragraph will be disregarded."). Nevertheless, and as explained supra, the circuit court based its imposition of a consecutive sentence on Kong's "extensive" criminal record as a whole and not on the specific convictions that Kong alleges are invalid. Thus, on the record before us, it cannot be said that Kong's due process rights were violated.

In *State v. Friedman*, this court concluded that "[a] waiver is the knowing, intelligent, and voluntary relinquishment of a known right." 93 Hawai'i 63, 68, 996 P.2d 268, 273 (2000) (citation omitted). Generally, the court will conduct a colloquy to ensure that the defendant's waiver of his or her rights is knowingly, voluntarily, and intelligently made. *State v. Kaulia*, 128 Hawai'i 479, 495–96, 291 P.3d 377, 393–94 (2013). To determine whether a waiver is voluntary and intelligent, "this court will look to the totality of facts and circumstances of each particular case." [14] *Friedman*, 93 Hawai'i at 68–69, 996 P.2d at 273–74.

In this case, Kong was advised of his right to a termination hearing, confirmed his understanding of that right, and repeatedly stated his decision to self-terminate from the Drug Court program. Specifically, at the January 26, 2011 hearing, the circuit court informed Kong that he had a right to a termination hearing, at which the State would be required to present "an appropriate basis for terminating [him] from the drug court program." Kong was advised that he had a right to have his attorney present at a termination hearing and to contradict the facts presented by the State. He also was advised that, following the hearing, the circuit court would determine whether he would remain in the program or would be terminated.

Kong also was advised of the result of self-terminating from the Drug Court program, or of being terminated following a termination hearing. Specifically, Kong was advised that his case would proceed to a stipulated facts trial "where it's almost virtually certain, unless your attorney filed any consti-

tutionally based motions on your behalf, it's virtually certain that you will be found guilty as charged." [15] During the colloquy, Kong indicated several times that he understood that he had a right to a termination hearing and understood the consequences of self-termination.

Approximately one week later, on February 3, 2011, Kong again indicated that he wanted to self-terminate from the program. Following a brief colloquy in which Kong confirmed that his mind was clear and that he was not taking any drugs or medication, the circuit court accepted Kong's self-termination from the program.

Although the extensive advisements regarding the right to a termination hearing did not occur at the February 3, 2011 hearing, the fact remains that Kong was advised of his rights, acknowledged he understood those rights, and repeatedly, in two hearings over the course of eight days, reaffirmed his desire to self-terminate. Under these circumstances, Kong voluntarily and intelligently self-terminated from the Drug Court program. Accordingly, Kong's self-termination was valid.

## IV. Conclusion

For the foregoing reasons, we affirm the March 1, 2013 judgment of the ICA, which affirmed the circuit court's April 11, 2011 Judgment of Conviction and Sentence.

Dissenting Opinion by ACOBA, J., with whom McKENNA, J., joins.

I would hold,[1] first, that pursuant to *State v. Hussein*, 122 Hawai'i 495, 229 P.3d 313

---

14. This court has not previously determined that a personal on-the-record colloquy is required when a defendant decides to self-terminate from the Drug Court program. We assume, without deciding, that such a colloquy is required.

15. The circuit court previously found that Kong knowingly, voluntarily and intelligently waived various trial rights upon his admission to the Drug Court program, and Kong does not raise any arguments with respect to these rights. The only issue on appeal is whether Kong validly waived his right to a termination hearing.

1. This court declined to hold oral argument in this case, thus foreclosing the parties from an

opportunity to fully explain their positions before this court, in a case where the Intermediate Court of Appeals (ICA) published its opinion and there were, as discussed herein, manifest and substantial questions regarding the court's ruling. *See* Order Accepting Application for Writ of Certiorari, No. SCWC–11–0000393, 2013 WL 2936070 (June 13, 2013) (Acoba J., dissenting to rejection of oral argument). " 'Oral arguments can assist judges in understanding issues, facts, and arguments of the parties, thereby helping judges decide cases appropriately.' " *Blair v. Harris*, 98 Hawai'i 176, 186, 45 P.3d 798, 808 (2002) (Acoba, J., concurring and dissenting) (citing R.J. Martineau, *The Value of Appellate Oral Argument: A Challenge to the Conventional Wis-*

(2010), the Circuit Court of the Second Circuit (the court) failed to provide adequate reasons on the record for sentencing Petitioner/Defendant–Appellant Stanley S.L. Kong (Kong) to consecutive, rather than concurrent sentences, thus failing to "confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational and fair." *Hussein*, 122 Hawai'i at 510, 229 P.3d at 328.

Second, the presumption of validity in the Pre–Sentence–Investigation Report (PSI) absent an objection by the defendant, as set out in *State v. Sinagoga*, 81 Hawai'i 421, 918 P.2d 228 (App.1996) (Burns, C.J., majority opinion)[2], is inapplicable inasmuch as (1) *Sinagoga* is irrelevant where none of the parties dispute that prior convictions in the PSI

*dom*, 72 Iowa L. Rev. 1, 4 (1986)); *see also* Clark Collings, Note, *Oral Argument Reform In Utah's Appellate Courts: Seeking to Revitalize Oral Argument Through Procedural Modification*, 2013 Utah L. Rev. On Law 174, 176 (2013) (stating that oral argument " 'enlivens the written briefs, heightens [the court's] awareness of what is significant to the parties, and invigorates [its] analytical senses.' ") (quoting *Blair*, 98 Hawai'i at 186, 45 P.3d at 808 (Acoba, J., concurring and dissenting)); *cf.* J. Mark White, *Request for Oral Argument Denied: The Death of Oral Argument in Alabama's Appellate Courts*, 69 Ala. Law. 123, 125 (2008) (noting that "[t]he impact that oral argument has on the perception of the parties as to the legitimacy of our legal system is compelling.") (citing Interview, 11 Haw. B.J. 4, 9–10 (2007)).

2. *Sinagoga* contained two majority opinions and a dissenting opinion. In the first opinion, the ICA unanimously held, *inter alia*, that "if a sentencing court gives consideration to the defendant's previous convictions in choosing to impose consecutive, rather than concurrent, terms of imprisonment, the court must ensure that any prior felony, misdemeanor, and petty misdemeanor conviction relied on was a counseled one." *Sinagoga*, 81 Hawai'i at 435, 918 P.2d at 242 (Acoba, J., majority opinion) (citation omitted). In the second opinion (Part IV.B.4), two judges held that "if the presentence report states that the defendant has a prior criminal conviction and the defendant does not respond ... with a good faith challenge ... that the reported criminal conviction was (1) uncounseled, (2) otherwise invalidly entered, or (3) not against the defendant, that prior criminal conviction is reliable for all sentencing purposes." *Id.* at 444–45, 918 P.2d at 251–52 (Burns, C.J., majority opinion).

were vacated on appeal; (2) the probation department erroneously included vacated convictions in the PSI; and (3) the vacated convictions are "not against the defendant[,]" *State v. Heggland*, 118 Hawai'i 425, 440 n. 7, 193 P.3d 341, 356 n. 7 (2008). Lastly, Kong's due process rights were violated by the court's use of the two dismissed convictions in sentencing Kong, and the violation was obvious plain error that "seriously affected the fairness, integrity, or public reputation of judicial proceedings[.]" *State v. Miller*, 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010).[3]

## I.

Kong was convicted of one count of Promoting a Dangerous Drug in the Second Degree, HRS § 712–1242 (Supp.2007)[4]

The dissent argued in response to the second opinion, *inter alia*, that the burden should be placed on the State, and not the defendant, to "come forward with proof of the validity of the relevant prior convictions[,]" because "the State is obviously the only party which can define that part of a defendant's criminal record it will use to support its request for consecutive sentencing." *Id.* at 436, 918 P.2d at 243 (Acoba, J., dissenting). The dissent further questioned the procedure suggested by the two-judge majority, inasmuch as under that procedure, "a defendant's failure to raise an uncounseled conviction constitutes, in effect, a <u>waiver</u> of his state constitutional right to effective assistance of counsel, ... <u>and</u> permits the State to use such a conviction, <u>even if uncounseled,</u> in the sentencing process." *Id.* at 437, 918 P.2d at 244 (emphases in original).

3. I also believe there was plain error inasmuch as Kong's waiver of rights with respect to the so-called "stipulated facts trial" was insufficient and failed to establish that all of his constitutional trial rights were knowingly, intelligently, and voluntarily waived.

4. HRS § 712–1242 provides in relevant part as follows:

(1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
. . . .
(b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
(I) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers;
. . . .

(Count 1) and one count of Prohibited Acts Related to Drug Paraphernalia, HRS § 329–43.5 (1993) [5] (Count 2), following Kong's self-termination from the Drug Court program. Prior to Kong's sentencing hearing, on March 31, 2011, the probation department prepared a PSI. The report stated that Kong had ten prior felony convictions, including seven burglary convictions. However, that total included two felonies, including one burglary conviction, listed under Cr. No. 92–0138, that had been vacated by the ICA. *State v. Kong,* 77 Hawai'i 264, 269, 883 P.2d 686, 691 (App.1994) (*Kong I*). Thus, the total number of felony convictions listed in the PSI was in error.

On April 11, 2011 the court conducted a continued sentencing hearing. Kong requested either a sentence of probation or concurrent sentences. Respondent/Plaintiff–Appellee State of Hawai'i (the State) took no position with regard to a concurrent sentence. The PSI recommended that Kong receive a concurrent sentence. However, the court sentenced Kong to two consecutive terms of imprisonment:

> Taking into consideration all of the factors set forth in [HRS § ] 706–606 [ (1993) ], including the extensive record of the defendant, which includes six burglary convictions, which really represents—I'm sorry. Yeah, six burglary convictions, ten felonies, which represents a lot of harm in our community.
>
> The [c]ourt is going to impose the following sentence in this matter. The defendant will be committed to the care and custody of the Director of the Department of Public Safety for a period of ten years on Count 1, five years on Count 2.
>
> . . . .
>
> In view of his extensive criminality, the [c]ourt is going to make these counts run

consecutive for a total of fifteen years, mittimus forthwith, full credit for time served.

(Emphases added.) On the same date, the court entered its Judgment of Conviction and Sentence.

## II.

### A.

Kong appealed to the ICA, arguing in relevant part, (1) the court erred by imposing consecutive terms of imprisonment without adequately articulating its reasons and (2) the circuit court violated Kong's due process rights by basing its sentence on the PSI, which included two convictions that were later vacated. In its Answering Brief, Respondent argued (1) "the trial court clearly stated [that] the specific fact of Kong's extensive criminal record was the reason for its imposition of consecutive sentencing," which was sufficient pursuant to [ ] *Hussein* [ ], and (2) because Kong failed to object to the PSI at sentencing, "he should not [ ] be allowed to argue that the [PSI] [was] inaccurate[ ]," pursuant to *Sinagoga* and *Heggland*.

### B.

The ICA affirmed Kong's sentence. *State v. Kong,* 129 Hawai'i 135, 145, 295 P.3d 1005, 1015 (App.2013) (*Kong II*). First, the ICA held that the court's statement at sentencing was sufficient to satisfy the requirements of *Hussein:*

> Kong's "extensive record" and the fact that he caused "a lot of harm in our community" are specific circumstances that led the Circuit Court to conclude that a consecutive sentence was appropriate in this case. Given these circumstances, the Circuit Court likely concluded that [Petitioner] was "dangerous to the safety of the public,

(2) Promoting a dangerous drug in the second degree is a class B felony.
(Emphasis added.)

5. HRS § 329–43.5 provides in relevant part as follows:
(a) It is unlawful for any person to use, or to possess with the intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack,

repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

or poses an unacceptable risk of re-offending [.]" *Hussein*, 122 Hawai'i at 509, 229 P.3d at 327. In fact, Kong had re-offended, admitting that he had used drugs while participating in the MDC program. Kong had been given a second chance when he was allowed to continue in the MDC program after relapsing. Yet, Kong decided to self-terminate from the program, suggesting that "rehabilitation appears unlikely due to his [ ] lack of motivation and a failure to demonstrate any interest in treatment [.]" *Hussein*, 122 Hawai'i at 509, 229 P.3d at 327. These specific circumstances support the conclusion that the Circuit Court's "decision to impose consecutive sentences was deliberate, rational, and fair." *Hussein*, 122 Hawai'i at 510, 229 P.3d at 328.

*Id.* at 141, 295 P.3d at 1012 (emphases added).

Second, the ICA held that the court properly considered Kong's PSI which included the two convictions that Kong contended were vacated. *Id.* at 143, 295 P.3d at 1013. The ICA did not discuss whether those two convictions were actually vacated. *See id.* However, the ICA concluded that Kong's failure to challenge the PSI "resulted in a concession of its accuracy." *Id.* (citing *Heggland*, 118 Hawai'i at 445–46, 193 P.3d at 361–62). The ICA also held that the potential use of two vacated convictions "did not rise to the level of plain error," because the court "based its sentence on Kong's extensive criminal record in general and not specifically on the [vacated] convictions." *Id.*

### III.

#### A.

*Hussein* represented a sea change in this court's jurisprudence. Prior to *Hussein*, courts were not required to provide reasons on the record to justify imposition of a particular sentence. *See State v. Lau*, 73 Haw.

259, 263, 831 P.2d 523, 525 (1992). Rather, this court "urged and strongly recommended that the sentencing court do so[.]" *Id.* In *Hussein*, the defendant challenged the court's imposition of consecutive rather than concurrent sentences. *Hussein*, 122 Hawai'i at 499, 229 P.3d at 317. In addressing this point of error, *Hussein* adopted as mandatory the advisement in *Lau*, when it stated that "[a]lthough to this point we have recognized the benefits of a statement of reasons but not mandated it, we now conclude ... that a court must state its reasons as to why a consecutive sentence rather than a concurrent one was required." *Id.* at 509, 229 P.3d at 327 (emphasis added).[6]

*Hussein* provided extensive rationale as to why such a requirement was adopted, including *inter alia*, the following:

Such a requirement serves dual purposes. First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate. An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public. Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors. It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term. Hence, reasons confirm for

---

6. It has been explained that in a "typical" case, the court imposes concurrent, rather than consecutive sentences. *See Sinagoga*, 81 Hawai'i at 436, 918 P.2d at 243 (Acoba, J, dissenting) (noting that the effect of a consecutive sentence was "an additional ten years [added to the defendant's sentence] over the typical concurrent sen-

tence of imprisonment.")(emphasis added); *cf. Hussein*, 122 Hawai'i at 509, 229 P.3d at 327 (holding that judges' discretion in imposing consecutive sentences is "limit[ed]" because "in order to impose a consecutive sentence, the judge must find certain facts").

the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair.

*Id.* at 509–10, 229 P.3d at 327–28 (emphases added). It was further noted that " 'the absence, or refusal, of reasons is a hallmark of injustice.' " *Id.* at 505, 229 P.3d at 323 (quoting *ABA Standards for Criminal Justice, Sentencing,* at 211–12, Commentary Standard 18–5.19, Imposition of Sentence (3d ed. 1994)(hereinafter *ABA Standards for Sentencing* )).

## B.

Precisely that sort of injustice took place in the instant case, inasmuch as the court's limited statement did not satisfy *Hussein* and did not sufficiently justify on the record the imposition of consecutive sentences on the defendant.

## 1.

It is readily apparent that the only mention of the court's decision to sentence the defendant to consecutive sentences was its statement that, "[i]n view of his extensive criminality, the [c]ourt is going to make these counts run consecutive...." The ICA maintained that this was sufficient to "[t]ak[e] into consideration all of the factors set forth in HRS Section 706–606, including the extensive record of the defendant, which includes six burglary convictions ... ten felonies,[7] which represents a lot of harm in our community." *Kong II,* 129 Hawai'i at 141, 295 P.3d at 1011. However, that statement was not directed toward explaining the imposition of consecutive rather than concurrent sentences. Kong had asked for probation and the State had requested an "open ten year term." The statements of the court cited by the ICA served to justify the court's decision to sentence Kong to a prison term, instead of probation, as had been requested by Kong. Thus, that statement was not a justification of the court's decision to impose consecutive sentences. *See Hussein,* 122 Hawai'i at 509, 229 P.3d at 327 (holding that "a court must state its reasons as to why a consecutive

sentence rather than a concurrent one was required").

## 2.

The court devoted only a single statement to explain the necessity of imposing consecutive sentences. The court merely related that "[i]n view of Kong's extensive criminality, the [c]ourt is going to make these counts run consecutive." This abbreviated recitation contravenes the holding in *Hussein* that giving reasons on the record for imposing consecutive sentences assures "the defendant, the victim, the public, and the appellate courts, that the decision to impose consecutive sentences was deliberate, rational, and fair." *Id.* at 509, 229 P.3d at 327.

In *Hussein,* this court set forth examples of constructive information that would satisfy the requirement of on-the-record reasons. *Id. Hussein* explained that "[i]t is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term." *Id.* The court's remarks in the instant case plainly ignored these examples, thus reverting to the practice existing prior to *Hussein* that did not provide assurance that the decision was (1) rational, or (2) fair.

Additionally, *Hussein* explained that "the less burdensome procedural alternative of consecutive term sentencing may be viewed as a way to obtain the same sentencing result as would be reached in extending sentences, but without the necessity of convening the more lengthy jury procedures required by *Apprendi*[ *v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ]." *Hussein,* 122 Hawai'i at 508, 229 P.3d at 326. It was further noted that in many trials, the State "moves for both extended and consecutive sentences in the same case, and [ ] it is not uncommon for the court to <u>deny</u> a motion for an extended term, while <u>granting</u> a mo-

---

7. As noted *infra,* this number was erroneous.

tion for consecutive terms." *Id.* at 508 n. 19, 229 P.3d at 326 n. 19. Hence, this court explained that "if consecutive terms sentencing may be employed as a possible alternative to extended sentencing and the jury fact-finding requirements imposed in *Apprendi,* such a possibility warrants closer scrutiny of consecutive sentences[,]" *id.* at 509, 229 P.3d at 327, or a reformulation of the basis for justification of consecutive sentences.

Because it failed to provide reasons, the court's solitary statement did not evince any rationality. From the court's reference to "extensive criminality," it does not follow that Kong should have been sentenced to consecutive, rather than concurrent sentences. The court failed to explain the particular facts relating to Kong that led to its decision to impose consecutive sentences, in the absence of a recommendation by any party or by the probation office for such sentences. In a rational sentencing context, it is not possible to draw a connection between consecutive sentences and a vague reference to "extensive criminality." As discussed *infra,* this court should not have to guess, on appeal, what about the nature of the prior offenses justified, in the court's mind, the sentences imposed.

For example, if the court's concern was the safety of the public, the court should have said as much, citing supporting facts, at which point Kong would have been informed of why the court had decided that his prior convictions meant he posed a risk to the public and hence warranted consecutive terms. On the other hand, if the court's concern was that the defendant posed an unacceptable risk of re-offending due to specific factors in his background, and had stated that on the record, Kong, the appellate courts, and the public would, again, have

been informed about why he was sentenced to consecutive sentences. Indeed, "inherent in the nature of justice is the notion that those involved in the litigation should understand and be understood." *In re Doe,* 99 Hawai'i 522, 534, 57 P.3d 447, 459 (2002).

Further, because the court neglected to recite the specific circumstances that led it to impose the sentences consecutively, rather than concurrently, there is no confirmation that under the circumstances, the court's sentence was fair. Hypothetically, if the court had reasoned that Kong was dangerous to the public, even though there was no indicia of violence from his earlier convictions, it is possible that the court abused its sentencing discretion.[8] On appeal, a reviewing court would not have the facts in the record available to it to determine whether the court had abused its discretion or not, if, as here, all the court articulated was a general reference to "extensive criminality." There would be no way to ensure that the sentence was arrived at fairly, based upon this lone phrase.

The inadequacy of the court's recitation is further highlighted by the *ABA Standards for Sentencing,* which this court quoted with approval in *Hussein.* The Commentary to Standard 18–5.19 states that "a concise statement [of reasons] may appropriately accompany a sentence that is within the parameters of the presumptive sentence for the offense." *ABA Standards for Sentencing,* Commentary to Standard 18–5.19 at 213. However, a "concise statement" is inappropriate when the court imposes consecutive sentences. *Id.* at 213 n. 2. Instead, "[a] more extensive statement [is] necessary to explain the reasons for the sentence." *Id.* at 213. Clearly, the court's single sentence did not amount to an "extensive statement" that ex-

---

8. In the instant case, the nature of the defendant's prior felonies may be relevant. Excluding the vacated Cr. No. 92–1038 convictions for burglary and unauthorized use of a propelled vehicle in Cr. No. 92–1038, *see Kong I,* 77 Hawai'i at 265, 883 P.2d at 687, Kong was convicted of eight total felonies, none of which were violent crimes. Instead, the crimes listed on Kong's PSI are primarily property offenses. The nature of Kong's prior felony convictions illustrates the usefulness of having the court articulate the specific facts that led to its decision, rather than

generally referencing "criminality," which adds *nothing* to sentencing procedures for *crimes.* Assuming from the court's statement that the past crimes were the basis for the consecutive sentences, the court needed to elucidate the specific matters that led it to conclude consecutive sentences rather than concurrent ones were warranted, in order to provide a "meaningful rationale to the defendant, the victim, and the public." *Hussein,* 122 Hawai'i at 509–10, 229 P.3d at 327–28.

plained the reasons for the consecutive sentences.

Moreover, as noted, no one requested a sentence of consecutive terms. Hence, the only justification for the consecutive sentences was the court's single statement about Kong's "extensive criminality." In this context, the court's solitary statement violated its duty to recite the specific circumstances related to the factors leading it to impose consecutive, as opposed to concurrent sentences, see Hussein, 122 Hawai'i at 510, 229 P.3d at 328, despite the lack of any recommendation to that effect from any party or the probation department.

"A good sentence is one that can be explained with reasons." Id. at 505, 229 P.3d at 323 (quoting State v. Hall, 255 Wis.2d 662, 648 N.W.2d 41, 45 (Wis.Ct.App.2002)). By failing to provide supportive reasons for sentencing Kong to consecutive sentences, the court abused its discretion and violated its duty under Hussein. It would seem plain, then, that Kong's sentence should be vacated and the case remanded for re-sentencing.

### IV.

With all due respect, the ICA's conclusion regarding the adequacy of the court's reasons undermines the sentencing process, in view of the fact, as discussed, that "reasons confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair." Id. at 510, 229 P.3d at 328. The absence of such reasons deprives us all of the benefit of this hallmark of judicial process. Instead of following this court's precedent in Hussein, and recognizing the public interest in rational and fair sentences, the ICA's decision effectively returns Hawai'i jurisprudence to the pre-Hussein standard, wherein trial courts are only advised, rather than required to give reasons when imposing consecutive sentences. See Lau, 73 Haw. at 263, 831 P.2d at 525.

Respectfully, first, the ICA incorrectly characterizes the court's statement regarding the "extensive record of the defendant ... which represents a lot of harm in our community[,]" as underlying its decision to sen-

tence Kong to consecutive, rather than concurrent sentences. See Kong II, 129 Hawai'i at 141, 295 P.3d at 1011. As discussed supra, this statement supports the court's imposition of prison rather than probation, but cannot also support its decision to impose consecutive sentences.

Second, according to the ICA, the court's statement regarding sentencing included the "specific circumstances that led the [court] to conclude that a consecutive sentence was appropriate in this case." Id. To the contrary, the court's statement contained no specific circumstances other than a general reference to Kong's record. No discussion of facts or analysis supported the court's brief reference to criminality, and, respectfully, the ICA points to no facts expressed by the court which demonstrate that the court considered Kong's particular circumstances, such as the fact that the bulk of Kong's prior felony convictions were for property crimes. By referring to the court's discussion as one of "specific circumstances," the examples set forth in Hussein, noted above, that would reflect the trial court's consideration of particular matters, such as, for example, a court's fact-supported determination that a particular defendant "is dangerous to the safety of the public," Hussein, 122 Hawai'i at 509, 229 P.3d at 327, are disregarded.

Third, the ICA held that the court " 'likely concluded' that Kong was 'dangerous to the safety of the public, or pose[d] an unacceptable risk of re-offending,' " and that the imposition of consecutive sentences was supported by Kong's decision to self-terminate, because that decision demonstrated that rehabilitation was unlikely. Kong II, 129 Hawai'i at 141, 295 P.3d at 1011 (emphasis added). In proposing what the court "likely concluded," the ICA mentions factors that were never articulated or even suggested by the court.

The court never concluded that Kong was "dangerous to the safety of the public" or "posed an unacceptable risk of reoffending." Not once during the sentencing hearing did the court ever reference Kong's decision to leave the drug court program. Hence, respectfully, the ICA in effect conducted its own sentencing evaluation, drawing inferences that the court itself was duty bound to

place on the record to engender confidence that the sentence was deliberate, rational and fair. *Hussein,* 122 Hawai'i at 509–10, 229 P.3d at 328. It is not the obligation of the ICA and of this court to justify a sentence based on the ICA's or our own evaluation of the record, because the sentencing court failed to provide reasons for its sentence.

In sum, the ICA could not rely on factors expressly enumerated by the court because there was no particularized expression of the facts impacting the court's choice. Instead, respectfully, the ICA rested on what it believed the court "likely concluded," despite the fact that such conclusions nowhere appear in the record. This is precisely the type of guesswork *Hussein* was intended to avoid. The purpose of *Hussein* was to remove doubt as to the sentencing court's reasons for imposing consecutive sentences by mandating that the court provide a "meaningful rationale." *Id.* at 509, 229 P.3d at 327. Respectfully, nothing could be more indicative of the insufficiency of the court's remarks than the inability to justify Kong's sentence without resort to speculation and conjecture.

## V.

Furthermore, respectfully, the majority in this case wrongly affirms the ICA, agreeing that the court's terse statement regarding Kong's "excessive criminality" was sufficient because it "satisfied the dual purposes set forth in *Hussein.*" Majority opinion at 102–03, 315 P.3d at 728–29.

First, the majority cites *Hussein* for the proposition that "the sentencing court is not required to articulate and explain its conclusions with respect to every factor listed in HRS § 706–606." [9] *Id.* at 102, 315 P.3d at 728 (citing *Hussein,* 122 Hawai'i at 518–19, 229 P.3d at 337–38). *Hussein* did state that there was a "presumption that all HRS § 706–606 factors were considered." 122 Hawai'i at 519, 229 P.3d at 337 (emphasis omitted). However, the majority omits altogether that the presumption was qualified in the very next sentence, which explained that "merely because all of the factors were considered does not mean that the requirement of giving reasons was satisfied. A presumption that the court considered the HRS § 706–606 factors does not indicate what the judge's rationale was in arriving at the conclusion that a consecutive sentence should be entered." *Id.* (emphases added).

In this case, the court's short statement left it impossible to ascertain the court's rationale. The court did not explicitly refer to any of the statutory factors or to any facts as to why Kong's so called "excessive criminality" mandated consecutive sentences. By failing to acknowledge the fundamental mandate in *Hussein*—that the court justify its sentencing decision with reasons—the majority effectively upends this court's decision in *Hussein* and, like the ICA, would appear to return this court's jurisprudence to its pre-*Hussein* state.[10]

Second, the majority maintains that the first purpose of *Hussein* was satisfied be-

9. HRS § 706–606 provides as follows:
The court, in determining the particular sentence to be imposed, shall consider:
(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed:
(a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
(b) To afford adequate deterrence to criminal conduct;
(c) To protect the public from further crimes of the defendant; and
(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

10. Respectfully, it is difficult to comprehend, in light of the court's abbreviated justification for its sentence, the majority's assertion that it is not upending this court's holding in *Hussein. See* majority opinion at 104 n. 7, 315 P.3d at 730 n. 7. To reiterate, *Hussein* held that a court must provide a "meaningful rationale" for the imposition of a consecutive sentence. *Hussein,* 122 Hawai'i at 509, 229 P.3d at 327. The majority's holding that this requirement is satisfied by a solitary statement devoid of any reasons connecting the defendant's specific circumstances to the imposition of a consecutive sentence renders *Hussein* virtually meaningless.

cause the court's statement "identified the facts or circumstances within the range of statutory factors that the court considered." Majority opinion at 102, 315 P.3d at 728. According to the majority, "the [ ] court's statement regarding [Kong's] 'extensive criminality' related directly to the first of the relevant statutory factors ... 'the history and characteristics of the defendant.'" *Id.* at 103, 315 P.3d at 729.

This conclusion is contrary to *Hussein.* The mandate presented in *Hussein* is not satisfied by a broad statement which simply "relates directly" to one of the statutory factors. Under *Hussein,* the court's statement must do <u>more</u> than merely evince consideration of the statutory factors. *See Hussein,* 122 Hawai'i at 509, 229 P.3d at 327. Instead, the statement must "recite the <u>specific circumstances</u> that led the court to impose sentences consecutively in a <u>particular case,</u>" thereby providing a "meaningful rationale" for all affected. *Id.* (emphases added). Respectfully, the majority misapplies the court's consideration of the statutory factors in HRS § 706–606(1) as also satisfying the court's obligation to give reasons on the record for its imposition of a consecutive sentence. As *Hussein* explains, these "are two separate matters." *Id.* at 519, 229 P.3d at 337 (emphasis added).

As discussed, the court mentioned <u>no</u> specific circumstances to justify the imposition of a consecutive sentence, nor did it mention <u>any</u> specific facts related to Kong's history or personal characteristics. The court's statement could have applied to <u>any person with a criminal record.</u> Nothing in the court's statement explained what facts or circumstances led it to impose a consecutive sentence in <u>this particular case.</u> This is precisely what *Hussein* prohibited—a general statement that provides no specific information or circumstances that amount to a "meaningful rationale" for imposing consecutive sentences. *See id.* at 510, 229 P.3d at 328.

Third, the majority claims that the court did not have to use any of the specific examples discussed in *Hussein,* because "the examples [*Hussein*] provided were illustrative." Majority opinion at 104, 315 P.3d at 730.

Respectfully, the examples in *Hussein* were plainly intended to provide guidance to courts on the nature of the recitals that were necessary. The examples were emblematic of the <u>articulation</u> that a court should employ in explaining its sentencing decision. Each of the examples offered require the court to discuss specific facts about the defendant's circumstances and to explain the conclusions drawn from those facts that justified a consecutive sentence. Such an analysis was not provided by the court here.

As noted above, it is not evident whether the court even considered the question of whether Kong was dangerous to the safety of the public, or that he posed an unacceptable risk of re-offending, or that his rehabilitation appeared unlikely. *See Hussein,* 122 Hawai'i at 509–10, 229 P.3d at 327–28. To reiterate, the court did not recite any circumstances that <u>applied specifically</u> to the defendant, Kong, (except for the reference to an erroneous number of convictions) nor did the court provide any analysis linking Kong's particular circumstances to the pronouncement of a consecutive sentence. Such solitary comments contravene the guidance provided in *Hussein.*

Moreover, the list of examples given in *Hussein* do not "introduce sentencing factors in excess of the statutory factors set out by the legislature," as the majority here argues. *See* Majority opinion at 104, 315 P.3d at 730. Rather, the examples ensure that based on its consideration of the HRS § 706–606 factors, a court gives reasons sufficient to demonstrate that the statutory factors were applied <u>in a meaningful fashion.</u> Thus, *Hussein* does not conflict with the legislative mandate contained in HRS § 706–606. Again, the majority mislabels "factors" as "reasons," <u>even though</u> *Hussein* explains that these are two separate matters. *Hussein,* 122 Hawai'i at 519, 229 P.3d at 337. While it is presumed that the court has considered all the statutory sentencing factors, the giving of reasons, a separate requirement, ties those general factors to the specific circumstances of the defendant. *Id.* "Because the two requirements are separate, no dilemma or confusion results." *Id.* (internal quotation marks omitted).

Fourth, contrary to the majority's position, the conclusions drawn by the court do not evince that the court's decision was rational and fair. Majority opinion at 102–03, 315 P.3d at 728–29. As discussed *supra*, the court's basis for its sentence cannot be discerned simply from the reference to Kong's record and the remark of "excessive criminality." As noted, one of the bases for requiring courts to identify at sentencing the facts and circumstances within the range of statutory factors was to assist the appellate courts in meaningful appellate review. *Hussein*, 122 Hawai'i at 509–10, 229 P.3d at 327–28. Inasmuch as the court did not identify the facts and circumstances underlying its sentence in this case, it cannot be determined on appeal whether the court's consecutive sentence was rational and fair.

## VI.

### A.

Contrary to the majority's position, the validity of prior convictions under *Sinagoga* does not apply here, because Kong's challenge to the validity of his prior convictions falls outside the scope of *Sinagoga*. In *Sinagoga*, the ICA held that prior convictions would be considered valid if the defendant failed to challenge a prior conviction as "(1) uncounseled, (2) otherwise invalidly entered, and/or (3) not against the defendant." 81 Hawai'i at 447, 918 P.2d at 254 (Burns, C.J., majority opinion). However, in *State v. Veikoso*, 102 Hawai'i 219, 74 P.3d 575 (2003), this court held that the "otherwise invalidly entered" language "should be disregarded," thereby limiting *Sinagoga*'s holding to the first and third prongs. *Veikoso*, 102 Hawai'i at 226 n. 8, 74 P.3d at 582 n. 8; *see also Heggland*, 118 Hawai'i at 440 n. 7, 193 P.3d at 356 n. 7 ("Pursuant to *Veikoso*'s modification of the *Sinagoga* procedure, a defendant is permitted to challenge a prior conviction on the grounds that it was (1) uncounseled and/or (2) not against the defendant."); *Heggland*, 118 Hawai'i at 447, 193 P.3d at 363 (Acoba, J., concurring) ("[T]he import of *Veikoso* is that [ ] *Sinagoga* ... does not apply in situations where the defendant does not raise a good faith challenge based on an uncounseled prior conviction and/or a prior

conviction that was not rendered against the defendant.").

In the instant case, Kong does "not raise an uncounseled conviction or a mistaken identity challenge." *Heggland*, 118 Hawai'i at 448, 193 P.3d at 364 (Acoba, J., concurring). To the contrary, on appeal to the ICA, Kong challenged the convictions relied on by the court on the basis that those convictions did not exist. Hence, *Sinagoga* would not apply at all and the State should not "benefit from the presumption of validity accorded an alleged prior conviction, as provided under step three of the *Sinagoga* analysis." *Id.*

### B.

Nevertheless, the majority maintains that (1) Kong's challenge falls within the third *Sinagoga* prong, majority opinion at 106–07, 315 P.3d at 732–33, (2) "nothing in *Veikoso* or *Heggland* ... relieve[s] a defendant of the burden of challenging prior convictions ...," *id.* at 107, 315 P.3d at 733, and (3) requiring Kong's objection to the use of invalid convictions would be contrary to *Heggland*. *Id.* at 107, 315 P.3d at 733.

### 1.

According to the majority, "a conviction that has been vacated is void, and thus is not a conviction 'against the defendant' " within the meaning of *Sinagoga*. *Id.* at 106, 315 P.3d at 732 (citing Black's Law Dictionary 1688 (9th ed. 2009)). Because Kong did not challenge the two invalid prior convictions in the PSI, the majority contends the invalid prior convictions must be considered valid. Majority opinion at 105–06, 315 P.3d at 731–32 ("Because Kong failed to raise a good faith challenge to the convictions ... the [court] did not err in relying on the PSI[.]") (citing *Sinagoga*, 81 Hawai'i at 445, 918 P.2d at 252 (Burns, C.J., majority opinion)). However, the holding in *Sinagoga* stating that a defendant may challenge a conviction as "not against the defendant" applies only in cases in which the defendant claims the conviction was "not against [him or her]" because of mistaken identity. *See Heggland*, 118 Hawai'i at 448, 193 P.3d at 364 (Acoba, J.,

concurring) (noting that *Sinagoga* did not apply because, *inter alia*, the defendant did not raise "a mistaken identity challenge").

This is apparent from the text of *Sinagoga*. In stating that the five-step procedure applied when a defendant raises a challenge that the conviction "is not against the defendant[,]" *Sinagoga*, 81 Hawai'i at 424, 918 P.2d at 231 (Burns, C.J., majority opinion), the ICA majority indicated that the conviction exists, but may relate to someone else, for example as a result of two people having the same name or another type of clerical error. A conviction that is "void," however, is not applicable to anyone. *See Black's Law Dictionary* 1709 (defining "void" as "of no legal effect; null"). Hence, an objection that a conviction was void does not fall within the *Sinagoga* category of "not against the defendant," *Sinagoga*, 81 Hawai'i at 424, 918 P.2d at 231, and accordingly the *Sinagoga* presumption does not apply.

### 2.

Second, the majority contends that because *Veikoso* "prohibit[s] collateral attacks on the validity of a prior conviction[,]" "the sole purpose behind [the] limitation on *Sinagoga* [, as] set forth in *Veikoso* [ (abrogating the "otherwise invalidly entered" category in *Sinagoga* ) ] is not implicated in the instant case." Majority opinion at 106, 315 P.3d at 732. This argument disregards the express holding in *Veikoso* and *Heggland* that *Sinagoga* 's initial three categories of challenges to prior convictions, *see Heggland*, 118 Hawai'i at 439–40, 193 P.3d at 355–56, were reduced to two categories. *See id.* at 440 n. 7, 193 P.3d at 356 n. 7. The *Sinagoga* rule never encompassed any possible challenge that might be brought to the PSI, as the majority implies. As such, *Sinagoga* was never intended to apply where a conviction

was overturned on appeal and therefore was no longer in effect.

Further, the majority asserts that "there is no logical reason for requiring a defendant to raise an identity challenge pursuant to [*Sinagoga*] …, but relieving a defendant of this burden for convictions that are vacated," because in both instances, " 'the defendant, more than anyone else, knows whether or not his or her prior criminal conviction was … irrelevant.' " Majority opinion at 104, 315 P.3d at 730 (quoting *Sinagoga*, 81 Hawai'i at 445, 918 P.2d at 252 (Burns, C.J., majority opinion)). Respectfully, this argument is not only wrong, it turns a blind eye to the fact that the PSI was erroneous, not because of the defendant's conduct, but because of the government's negligence. As discussed *infra*, levying the burden on the defendant to object in these cases serves only to absolve the State and the courts of accountability, while defendants are unjustly made to bear the cost of the government's mistakes.[11]

### 3.

Next, the majority contends that refusing to apply *Sinagoga* in this case would "requir[e] the State to prove the validity of each of the defendant's prior convictions at the time of sentencing." Majority opinion at 107, 315 P.3d at 733. This position, the majority maintains, was rejected by *Heggland. Id.* at 106–07, 315 P.3d at 732–33. To the contrary, as explained *supra*, *Veikoso* directed that "the 'otherwise invalidly entered' language in *Sinagoga* … should be disregarded[,]" *Veikoso*, 102 Hawai'i at 226 n. 8, 74 P.3d at 582 n. 8 (emphasis added), and therefore, as explained by both the majority and the concurrence in *Heggland*, the procedure outlined in *Sinagoga* applies only to challenges that a conviction was (1) uncounseled (i.e., without benefit of attorney representation), or (2) not against the defendant. *Heggland*, 118 Hawai'i at 440 n. 7, 193 P.3d at 356 n. 7; *see*

---

**11.** It would seem apparent that a great number of criminal defendants lack the resources and understanding necessary to determine whether the sentences listed in a PSI are valid. "Time and time again, the cases indicate that lay persons are typically unaware of the nature and import of court procedures." *Sinagoga*, 81 Hawai'i at 437, 918 P.2d at 244 (Acoba, J., dissent-

ing). "Because defense counsel does not have equal access to court records" it is "far more burdensome on the defense to search out each and every conviction on the defendant's record." Shirley M. Cheung, Note, *State v. Sinagoga: The Collateral Use of Uncounseled Misdemeanor Convictions in Hawai'i*, 19 U. Haw. L.Rev. 813, 841 (1997) (hereinafter *Misdemeanor Convictions* ).

*also Heggland,* 118 Hawai'i at 447, 193 P.3d at 363 (Acoba, J., concurring). To reiterate, Kong's challenge to his prior conviction does not fall into either one of these categories. Consequently, the *Sinagoga* procedures do not apply.

Furthermore, *Heggland* is distinguishable, inasmuch as there, the defendant had stipulated to a prior felony conviction in another state, including stipulating to the state conviction identification number. *Id.* at 428, 193 P.3d at 344. Ultimately this court found that there was sufficient evidence to support the existence of the defendant's prior conviction, noting that "[t]he most critical factor ... is the fact that [the defendant] does not contest the fact that he has a prior conviction (in fact he stipulated to it) ...." *Id.* at 445, 193 P.3d at 361 (emphases added).

Under those facts, the questions of fairness presented by this case were not presented in *Heggland.* Unlike in *Heggland,* here, Kong did not stipulate to his convictions, but simply failed to object at the hearing, something he now raises as plain error. Furthermore, as noted, it is undisputed that the convictions at issue in this case no longer exist and did not exist at the time of sentencing. Thus, this case is in an entirely different position than *Heggland.*

Finally, the majority contends that the State would run the risk of having the sentence vacated on appeal, majority opinion at

106–07, 315 P.3d at 732–33, if it failed to prove the validity of prior convictions. However, this is nothing more than what is to be expected. Removing the presumption would result in sentences being vacated on appeal only if they are premised on convictions that are invalid. As discussed, this result rests on basic notions of rationality and fairness in sentencing.

If, prior to sentencing, the State has any reason to believe that a particular conviction listed on the PSI is invalid, then indeed that conviction should not be considered. It rightfully is the State's responsibility to ascertain the correctness of a conviction, because the State owes its own good faith duty of candor to the court. If it is later determined that a conviction does not in fact exist, then the integrity of the sentencing process commands vacation of that sentence.

## VII.

Contrary to the majority's holding, where convictions do not exist, the *Sinagoga* framework is irrelevant. As reiterated by the majority, the *Sinagoga* majority indicated that " 'if ... the defendant does not [raise] ... a good faith challenge ... [a] prior criminal conviction is [treated as] reliable for all sentencing purposes.' " Majority opinion at 104, 315 P.3d at 730 (quoting *Sinagoga,* 81 Hawai'i at 445, 918 P.2d at 252 (Burns, C.J., majority opinion)).[12] But, the failure to raise

**12.** The majority's conclusion with respect to the validity of the sentence fails in any event, because even applying the *Sinagoga* framework to the instant case, the court failed to satisfy the procedures set forth in *Sinagoga* step three, part (a). That is, that "prior to imposing the sentence, the court shall inform the defendant that (a) each reported criminal conviction that is not validly challenged by the defendant is defendant's prior, counseled, validly entered, criminal conviction[.]" *Sinagoga,* 81 Hawai'i at 447, 918 P.2d at 254 (Burns, C.J., majority opinion) (emphasis added). In the instant case, the court did not inform Kong that the convictions listed on the PSI that were not challenged would be considered his prior, counseled, validly entered, criminal convictions.

The majority alleges that a court need not proceed with step three if the defendant does not challenge the convictions listed in the PSI. Majority's opinion at 24 n. 10. However, nothing in *Sinagoga* or this court's later cases reiterating the *Sinagoga* procedures limits the application of

step three to cases where the defendant is challenging prior convictions. In fact, step three is even more critical where the defendant has not challenged a conviction, because it informs the defendant of the consequences of not challenging the conviction. *See Sinagoga,* 81 Hawai'i at 447, 918 P.2d at 254. The five-step procedure in *Sinagoga* was established to be followed "where ordinary sentencing procedures are applicable and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for the imposition or enhancement of a prison sentence." *Id.*

The majority states that in *Heggland,* for example, steps three through five of *Sinagoga* were not addressed, after it was concluded that the defendant failed to raise a good-faith challenge to his prior conviction. Majority's opinion at 24 n. 10. However, in *Heggland* this court had no need to address steps three through five of *Sinagoga,* because it concluded, *inter alia,* that the circuit court erred in applying step two, and therefore vacated the sentencing portion of the circuit

a good faith challenge is inconsequential when Kong's convictions are acknowledged to be invalid. We know that two of the convictions listed on the PSI are non-existent and therefore are not reliable. Hence, *Sinagoga* would not apply. Applying *Sinagoga* would result in treating invalid convictions as valid, despite the fact that such convictions were vacated. No presumption should survive in the face of undisputed facts rebutting it.

Further, the mistakes in the PSI are not attributable to Kong. It would be unfair under these circumstances to fault Kong for not challenging what, in the first instance, was an egregious error by the probation department. As related, the probation department was statutorily mandated to prepare accurate information not only for the parties, but for the court's proper exercise of its sentencing authority. *See* Commentary to HRS § 706–601 (Supp.1997)[13]. References to good faith challenges only serve to obscure the court's own error in relying on an inaccurate PSI prepared by its probation officers.

court's judgment and remanded for resentencing. *See Heggland,* 118 Hawai'i at 440–41, 446, 193 P.3d at 356–57, 362.

**13.** HRS § 706–601 provides as follows:

§ **706–601 Pre–sentence diagnosis and report**

(1) Except as provided in subsections (3) and (4), the court shall order a pre-sentence correctional diagnosis of the defendant and accord due consideration to a written report of the diagnosis before imposing sentence where:
 (a) The defendant has been convicted of a felony; or
 (b) The defendant is less than twenty-two years of age and has been convicted of a crime.
(2) The court may order a pre-sentence diagnosis in any other case.
(3) With the consent of the court, the requirement of a pre-sentence diagnosis may be waived by agreement of both the defendant and the prosecuting attorney.
(4) The court on its own motion may waive a pre-sentence correctional diagnosis where:
 (a) A prior pre-sentence diagnosis was completed within one year preceding the sentencing in the instant case;
 (b) The defendant is being sentenced for murder or attempted murder in any degree; or
 (c) The sentence was agreed to by the parties and approved by the court under rule 11 of the Hawai'i rules of penal procedure.

Hence, this case exemplifies the questionable basis for placing the burden of raising a good faith objection on a defendant. Aside from the probation department, because "the [prosecution] is obviously the only party which can define that part of a defendant's criminal record it will use to support it's request for [enhanced] sentencing," the prosecution should be the party most responsible for confirming the validity of those sentences. *Sinagoga,* 81 Hawai'i at 435, 918 P.2d at 242 (Acoba, J., dissenting). "It [is] rational, logical, and efficient to require the proponent of any evidence of a prior conviction to ascertain its validity and to carry the burden of going forward with proof in that regard." *Id.; accord* Cheung, *Misdemeanor Convictions,* at 841.

Thus, it runs contrary to fundamental fairness to absolve the State and the probation department of accountability and to place the responsibility for ascertaining the accuracy of a criminal record maintained by the government exclusively on the defendant.[14] Leaving in place the burden on defendants or their

(Emphasis added.)

**14.** The majority maintains that its holding does not absolve the State and probation office of responsibility for ensuring the accuracy of the PSI, because the prosecution has the ultimate burden of proving that a defendant's conviction is valid, assuming that the defendant raises a good faith challenge in the first place. *See* majority opinion at 107 n. 11, 315 P.3d at 733 n. 11. However, it is precisely because, under *Sinagoga,* the defendant must first challenge the accuracy of the PSI that the defendant bears the exclusive responsibility of ascertaining the accuracy of his or her criminal record. It is only once the defendant has ascertained the potential inaccuracy that the burden is shifted to the State.

Thus, under this questionable precept, so long as the defendant is unaware of any potential problems, the State need not ensure the accuracy of the PSI-listed convictions. This entirely ignores the statutory responsibility of the probation department to prepare an accurate report in the first instance. *See* Commentary to HRS § 706–601. Moreover, placing the initial burden on the defendant is improper inasmuch as the State is seeking the enhanced sentence, and therefore should be held to the accuracy of the convictions it relies on to justify a longer term of incarceration. *See Sinagoga,* 81 Hawai'i at 435, 918 P.2d at 242 (Acoba, J., dissenting); *see also* Cheung, *Misdemeanor Convictions,* at 841.

counsel to verify the accuracy of each conviction relied on by the prosecution or the court will only perpetuate the illogicality of this rule.

## VIII.

Irrespective of Kong's failure to raise a good faith challenge to the validity of the convictions listed on the PSI, the court's reliance on the two vacated convictions violated Kong's due process rights. Put simply, the infirmity of Kong's sentence cannot be disputed. Kong's failure to object to the validity of the PSI at trial is irrelevant in light of what Kong pointed out on appeal and what we know to be true—that Kong was sentenced on the basis of convictions that were voided.

It is not disputed that, in sentencing Kong, the court relied on two prior convictions that were nullified when it stated that the defendant had "six burglary convictions, [and] ten felonies." (Emphasis added.) As noted, Kong's October 13, 1992 convictions in Cr. No. 92–0138(3), for burglary and unauthorized control of propelled vehicle, had been dismissed. These were two of the "ten felonies" relied on by the court in arriving at its sentencing decision. For all we know, these two felonies, bringing the total to ten (erroneously), may have been the tipping point for the court.

As noted before, this error was not the responsibility of Kong, but of the court and its probation department. The purpose of the PSI is to ensure that the sentencing court has "sufficient and accurate information" so that it may "rationally exercise its

discretion." Commentary to HRS § 706–601 (emphasis added). An accurate PSI is essential for a fair sentencing process, inasmuch as "the court must have correct information to render a just sentence." *State v. Durham*, 125 Hawai'i 114, 124, 254 P.3d 425, 435, amended on reconsideration in part, 125 Hawai'i 249, 258 P.3d 946 (2011). Thus, in the interests of a rational and fair sentencing process, the probation department must prepare a PSI that correctly states, *inter alia*, "the defendant's history of ... criminality." *See* HRS § 706–602 (Supp.1998).[15] That mandate was not followed here.

Because of the inaccuracies contained within the PSI, Kong's sentence rests on two convictions that were void. This result offends the due process guarantee of fairness. *See State v. Huelsman*, 60 Haw. 71, 86, 588 P.2d 394, 403 (1978) ("To say that the discretion of a sentencing judge may be exercised in a purely arbitrary fashion does violence to the concept of fairness embodied in due process."); *cf. United States v. Tucker*, 404 U.S. 443, 449, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (vacating a defendant's sentence because it was based upon two sentences that were unconstitutionally obtained). It is impossible to maintain that Kong's sentence was rational and fair when it rests upon two convictions that were no longer valid.

By increasing Kong's sentence on the basis of convictions, two of which were vacated in 1994, *see Kong I*, 77 Hawai'i at 269, 883 P.2d at 691, the court effectively punished him on the basis of crimes that the courts had nullified. Respectfully, the manifest injustice committed at the sentencing stage is perpetuated by the ICA's and the majority's contin-

---

**15.** HRS § 706–602(1) provided, at the time of sentencing in this case:

(1) The pre-sentence diagnosis and report shall be made by personnel assigned to the court, intake service center or other agency designated by the court and shall include:

(a) An analysis of the circumstances attending the commission of the crime;

(b) The defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, education, occupation, and personal habits;

(c) Information made available by the victim or other source concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any physical or psychological harm or financial loss suffered;

(d) Information concerning defendant's compliance or non-compliance with any order issued under section 806–11; and

(e) Any other matters that the reporting person or agency deems relevant or the court directs to be included.

(Emphases added.)

ued reliance on the erroneous PSI, to uphold the court's sentence even though we all know better.[16] Unquestionably, then, Kong's sentence is violative of due process. *See Huelsman,* 60 Haw. at 86, 588 P.2d at 403.

To correct this error, Kong must be resentenced. *See Tucker,* 404 U.S. at 449, 92 S.Ct. 589. Even in *Sinagoga,* upon which the majority relies, once the ICA held that the defendant's constitutional rights had been violated by the court's sentence, both the majority and the dissent acknowledged the necessity of remanding for the entry of a new sentence. *See Sinagoga,* 81 Hawai'i at 447, 918 P.2d at 254 (remanding the case to allow the defendant an opportunity to challenge the PSI) (Burns, C.J., majority opinion), *see also Sinagoga,* 81 Hawai'i at 437, 918 P.2d at 244 (Acoba, J., dissenting). Thus, even *Sinagoga* recognized that the violation of Kong's due process rights can be remedied only through the convening of a new sentencing hearing.[17]

## IX.

Kong did not object to the PSI at trial. Thus, the doctrine of plain error potentially applies, as it does in every situation in which a defendant should have but fails to raise an objection at trial. *See* Hawai'i Rules of Penal Procedure Rule 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). As explained in greater detail *infra,* it is necessary to notice plain error to protect the integrity of the judicial system and to prevent the manifest injustice that results from a sentence based on invalid convictions. The majority's contention that the defendant waived his objections ignores the effect of the erroneous PSI on Kong's sentence. Hence, it is necessary to vacate the sentence to preserve the public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of Kong's fundamental rights.

### A.

To reiterate, the ICA held that the inaccuracy in the PSI did not constitute plain error because "the record indicates that the Circuit Court based its sentence on Kong's extensive criminal record in general and not specifically on the [overturned convictions]." *Kong II,* 129 Hawai'i at 143, 295 P.3d at 1013. The majority argues the same.[18]

Because the court referred to Kong's "extensive criminality" without further explanation, there is absolutely no basis for concluding that the court did not rely on the invalid convictions. The majority's assertion, then, that "there was sufficient evidence to support the [ ] court's determination that Kong had an 'extensive' record of criminality[,]" majority opinion at 107, 315 P.3d at 733, does not square with the pronouncement of the court. Respectfully, it is not clear how the majority can affirm the ICA's determination that the court relied on all of Kong's prior charges and convictions, including the two that were invalid. *See Kong II,* 129 Hawai'i at 143, 295 P.3d at 1013. The court did not express at all any awareness that two convictions were invalid. Obviously, nothing on the record indicates the prosecutor, defense counsel, or probation officer called this error to the court's attention.

---

**16.** Despite the fact that, at this point, no one disputes that these two convictions were subsequently invalidated, *see Kong I,* 77 Hawai'i at 269, 883 P.2d at 691, the majority, in effect, concurs in maintaining the fiction that the two subject felonies under Cr. No. 92–0138 in the PSI were allegedly erroneous, by affirming the ICA.

**17.** The majority asserts that Kong did not assert that his due process rights were violated in his Application, and therefore waived this argument. *See* majority opinion at 107 n. 13, 315 P.3d at 733 n. 13 (citing Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.1(d)(1)). However, under HRAP Rule 40.1(d)(1), even if a party fails to raise an issue, "[t]he supreme court, at its option, may notice a plain error not presented." *See also Miller,* 122 Hawai'i at 116, 223 P.3d at 181.

**18.** The majority maintains that "the alleged inaccuracy in the PSI does not rise to the level of plain error because the record indicates that the [ ] court based its imposition of a consecutive sentence on Kong's 'extensive' criminal record as a whole and not solely on the specific convictions that Kong alleges are invalid[,]" majority opinion at 107, 315 P.3d at 733, despite the lack of any indication in the court's sentence that it did not consider the two invalid convictions.

The court's statement regarding Kong's "extensive criminality", then, plainly refers to all of Kong's convictions listed in the PSI. That the court included in its consideration those convictions that had been nullified cannot be disputed. The court mentioned all ten felonies in rendering its sentence.

Plainly, it is impossible to separate the court's statement regarding excessive criminality from all of the convictions mentioned, including the vacated ones, because the court itself made no distinction among the convictions it cited. There is nothing in the record to support the ICA's and the majority's position that the court's sentence did not rely on the two void convictions yet somehow relied on Kong's "extensive criminality." What part of "the criminal record in general," *Kong II*, 129 Hawai'i at 143, 295 P.3d at 1013, mentioned by the ICA and what part of the "criminal record as a whole," majority opinion at 107, 315 P.3d at 733, mentioned by the majority cannot be understood as including the two invalid convictions? Respectfully, the facts are simply contrary.

### B.

To reiterate, the probation department is duty bound to prepare an accurate PSI to aid the court in exercising its discretion in a rational manner. Commentary to HRS § 706–601. As said before, this court will notice plain error to "correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Miller*, 122 Hawai'i at 100, 223 P.3d at 165 (internal quotation marks and emphases omitted). All four bases for recognizing plain error are eminently prominent here.

First, few scenarios could be more injurious to the fairness and integrity of our judicial system than for any court to sustain a sentence based on convictions that in fact do not exist. One of the ultimate injustices must be to sentence a defendant based on non-existent convictions.

Second, subjecting a defendant to an enhanced penalty of consecutive sentences based upon crimes that he did not commit can only serve to undermine the public reputation of judicial proceedings. For this court to fail to notice plain error and to sanction such an approach confirms for the parties, the trial courts, and the public that sentencing based on invalid convictions is legitimate and acceptable. Respectfully, greater injury to the public reputation of this court's integrity is difficult to imagine.

Third, it is self-evident that the ends of justice are promoted by vacating a sentence that is tainted by the court's reliance on two void convictions and by remanding for a new sentencing hearing.

Finally, plain error must be recognized to prevent the denial of Kong's fundamental right to a fair sentencing procedure.

These circumstances are precisely those in which this court must apply the plain error doctrine in order to preserve the integrity of the sentencing process and to prevent injustice. The vacation of a sentence based on prior void convictions would appear to be the obvious effectuation of this doctrine. Under the law, this is the right thing to do.

### X.

Based on the foregoing, I respectfully dissent.